## VIOLA McCORMICK

*v.*

## LOUISE STEPHANY et al.

[Filed December 26th, 1900.]

1. A covenant to convey, when the covenantor "should find a purchaser," becomes obligatory when the covenantor finds some person who is able and willing to pay the covenantor's price and to purchase the property.

2. Mere passing conversations of the covenantee indicating an indisposition to buy, given out in course of consultation with her counsel who was the covenantor, will not estop the covenantee from enforcing the covenant, when the counsel is not shown to have disclosed to his client the effect of her statement.

3. A clause in a lease, under seal, giving to the lessee the right to buy the devised premises in a named case, is not a mere option, in the nature of a first invitation to purchase, which, being without consideration, must be accepted in the terms of the offer, and which may be held to be rejected by a counter proposition. Such a clause is a completed purchase of a right to have a conveyance, if the purchaser shall choose to buy upon the terms named. The demand of more than such a contract obliges the covenantor to convey, should not be held to be a rejection of the privilege to purchase, enabling the covenantor to retain the consideration paid and to refuse to convey. A subsequent demand in accordance with the covenant is obligatory upon the covenantor.

4. When a covenant to convey does not entitle the covenantee to a deed with full covenants, her right to a conveyance will not be defeated because she demands such a deed, if the covenantor in refusing does not object on that account, and wholly denies the covenantee's right.

5. A widow will not be decreed to convey her dower right in aid of her husband's covenant to convey his lands. Her refusal will not be held to be fraudulent. Her dower right is her own property. She commits no fraud when exercising her unlimited right to retain or dispose of her own property.

6. An agreement that a lessee shall have an option to buy, not specifying what estate shall be bought, is, under the circumstances of this case, an agreement to convey an estate in fee-simple.

7. Indemnity against the dower right of a wife will not be decreed unless it is shown that the husband has fraudulently induced the wife to refuse to release. The reason is that requiring such an indemnity is a strain upon the wife's freedom of choice, as the interests of the husband

would prompt him unduly to influence her action. This reason fails when indemnity is sought, after the husband's death, against the dower right of a widow, for the heirs who are required to indemnify are not in a position to exercise an undue influence upon the widow.

On bill, answer and cross-bill, supplemental bill, answers and proofs.

The complainant, in the present condition of the pleadings, appears as executrix of the last will of George McCormick, and as residuary devisee and legatee under that will. She seeks to obtain a decree for the specific performance of a contract made by August Stephany, in his lifetime, for the conveyance of a hotel property in Atlantic City, known as the "Extra Dry." Mr. Stephany died intestate. The complainant makes defendants the administratrix of Mr. Stephany and also his widow and children, and, by a recent amendment, the residuary devisees of the fee of George McCormick's lands are also made parties to this suit.

The contract for conveyance was one of the clauses of a lease of the premises in question, made in June, 1897, by Mr. Stephany to Mr. McCormick. By mistake, certain words were omitted which ought to have been inserted. The completed clause is hereinafter set forth.

Mr. McCormick entered into possession, and in October, 1897, died testate, during the term, giving all his estate to his widow, the complainant, for life, with full power of disposal, and a limitation over upon her death to the parties brought in by the recent amendment.

It is claimed by the complainant that in November, 1897, Mr. Stephany "found a purchaser" for the premises, within the meaning of the phrase used in the lease. The complainant thereupon, on December 22d, 1897, gave written notice to Mr. Stephany that she would exercise the option to purchase the premises in question for the $12,000, and that sum would be paid on tender of a deed "with full covenants." On May 18th, 1898, the complainant tendered to Mr. Stephany the purchase-money, $12,000, and demanded a deed "with full covenants free of all encumbrances." On May 19th, 1898, Mr. Stephany

14

McCormick *v.* Stephany.

refused to make a deed with full covenants free of all encumbrances to Mrs. McCormick, giving his reason therefor, in a written notice addressed to her, "because you are not entitled to a conveyance of the property above mentioned, either under the said lease or under any other covenant." On June 9th, 1898, Mr. Stephany demanded, in writing, payment of rent, or that complainant quit the premises, and threatened proceedings to dispossess her. A distraint levy appears to have been made the same day for rent claimed to have come due June 1st, 1898. On June 4th, 1898, the complainant filed her bill against Mr. Stephany alone, praying a decree for specific performance by the delivery to her of a deed "with full covenants" conveying the premises, upon her payment of the $12,000, which she tendered to the defendants, and that the enforcement of the distress and the proceedings to dispossess her might be enjoined.

Mr. Stephany shortly after died intestate, the defendant Louise Stephany, his widow, was appointed administratrix, &c. He left five children, to whom his estate in the "Extra Dry" descended, subject to the widow's dower. On July 22d, 1898, the complainant abandoned the first bill against Mr. Stephany and filed a new one (the original bill in this cause), having the same object, against his widow and heirs-at-law. An order to show cause was allowed, and on the coming in of the order the defendants presented affidavits denying the equities set up by the complainant, and raising a number of questions, which were disposed of, and a preliminary injunction was granted. See *McCormick* v. *Stephany, 12 Dick. Ch. Rep. 257.* In this new bill, filed July 22d, 1898, the complainant prays a decree that the defendants deliver "a good and sufficient deed for the premises" upon payment, &c., and does not ask that the deed shall contain any covenant.

Since the hearing of the application for the preliminary injunction the defendants have filed their joint and several answer to the original bill, admitting that Mr. Stephany, in his lifetime, demised the "Extra Dry" to Mr. McCormick, in his lifetime, but denying that it was with the privilege of purchasing during the continuance of the lease for the sum of $12,000. They admit that Mr. McCormick continued in pos-

McCormick *v.* Stephany.

session as tenant under the lease until his death. They deny in detail the allegations of the bill going to show that Mr. Stephany had "found a purchaser" for the premises for the price of $15,000. They admit service of demands of performance by complainant, and for rent and of notice to quit and the issue of the distress warrant by defendant. They deny that complainant at any time, either before or since Mr. McCormick's death, "accepted the offer of the option contained in the said lease," and allege that she has "at all times waived, refused and rejected the same." They further answer that Mrs. Stephany has never agreed to convey her right of dower and has always been unwilling to do so. They further, by cross-bill, set up the mistake in the omission from the lease of the clause relating to the action of the party of the second part on receiving notice, &c., and pray that the lease and agreement for purchase may be reformed by inserting it in its proper place.

After the opinion reported in *12 Dick. Ch. Rep. 257* was pronounced, the complainant filed a supplemental bill, reciting the allegations of the original bill, and averring, by way of supplement, that in January, 1898, Mr. Stephany and his wife had mortgaged the "Extra Dry" and also other lands of Mr. Stephany to one Burges, and that Mr. Robert E. Stephany, as solicitor for the mortgagee, had filed a bill in this court to foreclose that mortgage, and had made Mrs. Stephany a defendant, as dowcress; had prosecuted the bill to decree, execution and sale, and that at the sale Mr. Robert E. Stephany, as agent for his mother, had, in her name, purchased all of the mortgaged premises, including the "Extra Dry," at one bid of $1,100, and that the sale was reported to this court; that afterwards a statement and affidavit was filed to the effect that the bidder was financially unable to pay the purchase-price, and that, without any order in the cause, all the mortgaged premises, excepting the "Extra Dry," were re-advertised. The complainant further alleges, in her supplemental bill, that Mr. Robert E. Stephany admitted shortly after the first advertisement that the foreclosure was an amicable one, designed to put the title of all Mr. Stephany's lands in the name of Mrs. Stephany; that the claim that she was financially unable to pay her bid of $1,100 was

false, and that the abandonment of the first sale, which included the "Extra Dry," and its omission from the second advertisement, was in accordance with a purpose and plan conceived by Mr. Stephany, in his lifetime, and continued by Mrs. Stephany and his heirs since his death, whereby Mrs. Stephany should, by her refusal to convey her dower right in the "Extra Dry" to the complainant, according to the contract, prevent her from securing the benefits of that bargain. The complainant again tenders performance by payment of the agreed price, or to pay $1,100 to Mrs. Stephany, to enable her to complete her purchase and take title to the premises, with a prayer for conveyance without covenants as in the original bill, not only against the heirs, but also against Mrs. Stephany; that the actions of the defendants be declared to be a fraudulent contrivance to keep alive her dower right as against the estate agreed to be conveyed to Mr. McCormick, and that the heirs be decreed to convey the premises with an indemnity against the dower right.

To the supplemental bill the defendant Louise Stephany, the doweress, files her separate answer, admitting the mortgage to Burges, and the proceedings in this court to foreclose it; that the other mortgaged premises and the "Extra Dry" were put up at one bid; that Mrs. Stephany bid them in, as stated in the supplemental bill. Her answer declares she has no knowledge of the affidavits for re-sale, and denies the re-advertisement without any order of the court, and recites an order for re-sale, made December 13th, 1898, and alleges that Burges, on December 15th, 1898, released the "Extra Dry" from the lien of his mortgage, and that the sheriff, at the re-sale, excepted the "Extra Dry" and did not sell it. She denies knowledge of any admissions by Mr. Robert E. Stephany as to the object of the first advertised sale, and declares the latter was not, in that matter, her solicitor. She further denies any plan or contrivance to defraud the complainant out of the benefit of the contract of sale.

The heirs-at-law, by their guardian and the administratrix of Mr. Stephany, file a similar answer. Issue has been joined, and the cause has come to hearing on the merits.

McCormick v. Stephany.

*Mr. Clarence L. Cole,* for the complainant.

*Mr. George A. Bourgeois,* for the defendants.

Grey, V. C.

There were some preliminary questions as to the construction of the lease which contains the clause giving to McCormick the right to purchase, and also the terms of his will, which were discussed and decided in the previous hearing on the application for the injunction. At the same time the alleged omission from the clause in the lease giving the right to purchase was then disposed of in the preliminary argument and opinion. *McCormick* v. *Stephany, 12 Dick. Ch. Rep. 257.* On final hearing it was admitted that in the lease the agreement clause intended to be entered into by the parties, contained the omitted words, and that it should read as follows (the words originally omitted, but now agreed to be supplied, are printed in italics) :

"And it is further agreed by and between the above parties that in case the said party of the first part should find a purchaser for the said premises, then the said party of the second part shall have the option, during the continuance of this lease, to buy of the said party of the first part the said premises for the sum of twelve thousand dollars; and in case the said party of the second part, *on receiving notice that the said party of the first part* has found a purchaser for the said premises, should refuse to buy the said premises at the price above mentioned, then the said party of the second part, promises and agrees, upon three months' notice, to quit and yield up the possession of the said premises to the said party of the first part on the first day of June next following the expiration of the said three months' notice."

The first question to be now considered is the meaning of the phrase "found a purchaser," because it was upon this happening that the lessee's right to buy the property accrued.

The complainant contends that Mr. Stephany "found a purchaser" whenever, in good faith, he came to a position of willingness to sell the premises to some other person who was willing and able to buy. The defendants, on the contrary, insist that he had not "found a purchaser" until he had actually conveyed the premises to some other person.

The obvious intent of the agreement was to give to Mr. Mc-

Cormick a preferential right to purchase the premises of which he was in possession, whenever Mr. Stephany should find some person who was willing to pay him his price. In such case it was agreed Mr. McCormick should have the right to buy the property at the price of $12,000. The words were used in the popular sense. The purchaser was the person willing and able to purchase. The other construction would make the agreement to sell to McCormick self-destructive. To contend that Mc-Cormick's right to purchase could only arise when Stephany had already destroyed it by conveying to someone else, is to argue that it was self-defeating from the beginning. But, in the view which this court takes of such transactions, Mr. Stephany had found a purchaser. The documentary proofs conclusively show that on November 15th, 1897, he entered into a written agreement, signed by himself and Mr. C. D. Haines, whereby he agreed to convey the "Extra Dry" to Mr. Haines for the sum of $15,000; that on November 20th, 1897, Mr. Stephany received, endorsed and collected Mr. Haines' check for $200, and on the same day gave a receipt for it as "on account of purchase-sum of the 'Extra Dry.'" By these incidents Mr. Haines had, in equity, become the purchaser, and Mr. Stephany the vendor of the premises in question. This construction comports not only with the equitable view of the action of the parties, but with their own actual interest in the premises. Mr. Stephany's conduct, and also his letters to Mr. Haines' counsel, show that he regarded his bargain with Haines as a concluded transaction until he afterwards found, shortly before he wrote the letter of December 27th, 1897. that Mrs. McCormick intended to insist on her right to purchase. Then, and to defeat her right to purchase, he proposed to withdraw from his bargain with Mr. Haines.

It must be held that Mr. Stephany had so "found a purchaser" that the privilege to buy the "Extra Dry" contained in his lease to McCormick might be exercised.

The defendants also insist that Mrs. McCormick abandoned her rights to purchase the "Extra Dry" in a conversation she had with Mr. Stephany, immediately after the probate of Mr. McCormick's will, October 20th, 1897, in discussing the man-

agement of McCormick's estate, in which she spoke of winding up the business conducted in the "Extra Dry" because of the state of her health. Mr. Stephany informed her that several persons had applied to purchase the property, and Mrs. McCormick said "she wished he would sell it, because it occurred to her that the fixtures, the personal property in the 'Extra Dry,' could be sold to better advantage to the person who bought the real estate than to one who had to move out at the expiration of the lease." This remark is stated to have been made in the course of a conversation wherein Mr. Stephany was, as her counsel, advising Mrs. McCormick as to matters in connection with the management of her late husband's estate, and it is claimed that Mr. Stephany, in afterwards selling to Haines, acted on this statement, and that Mrs. McCormick is thereby estopped to assert her right to purchase.

Such a casual observation, made in the course of conversation, not directed to or specifically mentioning the privilege of purchase, which it is claimed was thus abandoned, cannot, by mere implication, be held to have had such an important result. There is no proof that Mr. Stephany was led by this remark to suppose Mrs. McCormick had abandoned her right to purchase. It is true that he dealt with Mr. Haines after the conversation with Mrs. McCormick, but this does not show that he so dealt because of that conversation. It is not a case of *post hoc ergo propter hoc.* On the contrary, Mr. Stephany's own letters written to Mr. Haines' counsel, after this conversation, indicate that he had Mrs. McCormick's right to purchase in memory as an existing right which he feared when he dealt with Haines, but relied on her supposed poverty to prevent her assertion of it. Furthermore, at the time this conversation was had, Mrs. McCormick was consulting Mr. Stephany, as her lawyer, regarding the conduct of the business of settling her husband's estate. If the effect of her conversation was to take from her an asset of that estate, and to give it to Mr. Stephany, or leave him free so to act as to destroy it for his own advantage, as is now claimed, he was bound to have told her that this would be the result. Mr. Stephany was also one of the executors who had joined in the proof of Mr. McCormick's

McCormick *v.* Stephany.

will. Occupying these relations to Mr. Stephany, Mrs. Mc-Cormick was not dealing with him "at arm's length," but in the confidential relation of her counsel and co-executor. If her declarations of abandonment of her privilege of purchase had been even more explicit, the law would not permit Mr. Stephany to take advantage of them to his own profit, unless it should appear that Mrs. McCormick was fully advised of their operation and effect. No such showing has been made.

The defendants further contend that the clause in the lease giving the right to purchase was a mere option, in the nature of a suggestion or proffer of sale by Mr. Stephany, and that it had no force or effect until it was accepted by the lessee, and could be accepted only on the precise terms of the proffer; that a demand for a conveyance on any other terms was not only a refusal of the privilege of purchase, but operated as a forfeiture of that privilege; that Mrs. McCormick's demand for a deed with full covenants was a forfeiture of all right under the clause in the lease giving the right to purchase.

Several cases are cited to sustain this contention. Among them, *Potts* v. *Whitehead, 8 C. E. Gr. 512 (Court of Appeals),* which does not hold that a demand beyond the contract works a forfeiture. It does affirm the indisputable proposition that an acceptance of an option must meet the proffered contract in every respect, else it is no acceptance. In that case there was a mere offer to sell within a limited time, for which no consideration was paid, and the question turned upon the acceptance.

*Lounsbery* v. *Locander, 10 C. E. Gr. 554 (Court of Appeals),* is also cited, but far from sustaining the defendants' argument, has a tendency to belittle and refute it. In that case the contract "agreed that Locander is to have the refusal of a five-acre lot," &c., and contained neither specification of the estate in the lots which should be conveyed, nor any provision for covenants. See case, when in this court, *9 C. E. Gr. 419.*

The complainant, in the prayer of the bill, demanded a conveyance with covenants, &c., and obtained in this court a decree which required a conveyance with covenants, &c. The court of appeals, although the complainant had persisted in his over

McCormick v. Stephany.

demand for a deed with covenants up to the point of actual suit and decree, did not hold that his right to a conveyance had been forfeited; on the contrary, it sustained and enforced that right, notwithstanding the over demand for a conveyance with covenants, and sent the cause back to this court for correction, by striking out the part of the decree directing covenants to be inserted in the conveyance. The court of appeals termed this feature a formal and probably, under the circumstances of this case, purely technical objection.

The case upon which the defendants' counsel most confidently relied to sustain his contention that Mrs. McCormick had, by demanding a deed with covenants, forfeited her right to a conveyance is *Weaver* v. *Burr, 31 W. Va. 736 (Supreme Court of Appeals of West Virginia, December 15th, 1888)*. In that case the foundation of the decision is the court's declaration that "it is now well settled that where the promise on the part of the proposer to continue the offer for a specified time is made without consideration, it is *nudum pactum,* and may be withdrawn at any time, provided such restriction be communicated to the other party before he has accepted the same, for until the proposal is accepted there is no contract," &c., citing *Bish. Cont.* §§ 77, 79; *Benj. Sales* § 41, &c. And on this predicate the court held a mere invitation by letter to purchase within a named time not to have been accepted within the time named, but to have been rejected by an attempted acceptance stating a new condition. But the principal case and all its citations will be found to be instances where the proposer, *without consideration moving,* makes an offer specifying terms of sale, which the receiver of the offer does not accept, but answers by a counter proposal. In such case there never was an agreement, on the contrary the counter proposition was equivalent to a refusal. *Hyde* v. *Wrench, 3 Beav. 336.* But this principle, and the line of cases which supports it, have no application in the present cause where a valuable consideration has moved. The agreement to sell was contained in a lease of the premises, and in such cases the payment of the rent is held to be applicable as consideration for the agreement to convey at the named price. See decisions cited in *McCormick* v. *Stephany, 12 Dick.*

*Ch. Rep. 262,* and in *Waters* v. *Bew, 7 Dick. Ch. Rep. 790.*
Such an agreement to convey is not a mere unaccepted proffer
based upon no consideration, as is a letter offering to sell, nor
is it a naked promise to sell at a price within a limited time.
It is a completed purchase of a right to have a conveyance if
the purchaser shall choose to buy upon the terms named. *Page*
v. *Martin, 1 Dick. Ch. Rep. 585 (Court of Appeals).* In such
case there is no question of the arrival of the parties at a
common intent. They have already made a contract upon con-
sideration paid, by which the owner is bound to convey whenever
the condition happens, and the making of a counter proposal
to him does not enable him to retain the consideration paid
and to declare the contract forfeited. If the transaction was a
mere proffer, it might be withdrawn before acceptance, but when
it was a contract for consideration paid, the party obligated
to sell, if required, could not withdraw pending acceptance.

The real inquiry in such cases is, has the lessee within the
time specified demanded performance? There is no denial that
Mrs. McCormick has demanded performance during the term
of the lease, but it is said she defeated her demand when she
asked a deed *with full covenants,* which the contract did not
require the owner to give. Mr. Stephany did not refuse com-
pliance on this account, but in writing explicitly denied Mrs.
McCormick's right to any conveyance of the premises. He had,
previously to her demand, attempted to declare the lease under
which Mrs. McCormick asserted her right to purchase to be void.

At every stage of the case he, in his lifetime, and the de-
fendants since his death, have refused to convey. Mr. Stephany,
in writing to Mrs. McCormick, refused her a deed and stated his
reason to be "because you are not entitled to a conveyance of
the property above mentioned, either under the lease or under
any other contract." The defendants, by their answer in this
cause, take the same position. That is their present contention
in argument. At no time has the refusal to convey turned upon
the demand for a deed with covenants. That is an afterthought
excuse. In *Scott* v. *Shiner, 12 C. E. Gr. 187,* in a like case the
defendant was not permitted to escape performance by setting
up as an excuse an over demand by the complainant for a deed

with covenants, when at the time of the demand, the defendant made no objection on this account, but had totally denied the complainant's right. *Lounsbery* v. *Locander, ubi supra,* shows how little weight the court of appeals gave to such a technical excuse for the non-performance of the contract. Both of these cases were based upon mere options given, as distinguished from conditional contracts entered into, upon consideration paid. The cause under examination is in the latter class, in which an over demand, as above shown, cannot be held to release the owner from his obligation. The cases cited are, therefore, even more favorable to the complainant's contention that this objection is purely technical and not to be favored.

It remains on this branch of the case only to inquire whether the complainant has, in accordance with the condition of the contract, demanded performance.

That she tendered $12,000, the contract price, is admitted. She did ask a deed with covenants, but, as above stated, this over demand did not defeat her right. Besides her formal demand, in writing, the complainant has filed her bill in this case on the 22d day of July, 1898, during the term of her lease as required by the contract, and by this bill asks a decree for a conveyance, and makes no mention of any requirement of covenants. In view of the continuous and absolute denial by Mr. Stephany, and by his representatives who succeed him, that the complainant has any right whatever to any conveyance, either with or without covenants, the filing of her bill praying a conveyance without mention of covenants, is of itself a demand for a deed, sufficient to satisfy the terms of the contract.

The complainant, by the supplemental bill, alleges that Mr. Stephany in his lifetime, and his heirs since his death, have planned and contrived with Mrs. Stephany to deprive the complainant of the benefit of her bargain for the purchase by arranging that Mrs. Stephany should refuse to convey her dower right.

The complainant claims a decree for a conveyance not only of the fee of which Mr. Stephany died seized, but also of Mrs. Stephany's dower right, or else indemnity at the expense of the heirs against the assertion of that right.

So far as the prayer of the bill seeks to compel a conveyance of the widow's dower right as an incident to a decree for the performance of an agreement to convey made only by the husband, it must be refused. Mr. Stephany, in his lifetime, had no power either by immediate action or by contract for future action to affect his wife's dower right. She can retain that against his heirs, his devisees, or even his creditors. His covenantee in a contract for conveyance has no better standing. Nor can any fraud be imputed to Mrs. Stephany because of her refusal to convey her dower right. She is in no way bound to convey. She may convey or refuse to convey, either with or without reason. Her dower right is her property, over which the complainant, without Mrs. Stephany's own consent, neither has, nor can acquire, any control. She commits no fraud by her exercise of her unlimited right. In *Young* v. *Paul, 2 Stock. 408,* Chancellor Williamson found as a fact that the husband had agreed to convey, and that his wife, though not a party to the contract, had expressed her assent to it; that the husband in afterwards refusing to convey, had acted in bad faith, so that the wife's unwillingness to execute a deed was more in compliance with his wishes than with her own unrestrained judgment, yet the chancellor declared, after a careful examination of all the authorities, that he would dismiss the bill rather than decree the wife to join in the deed. The court of appeals affirmed the decree. *Id. 414.* The courts uniformly refuse to decree that the wife shall join in a deed to enforce performance of the husband's contract to convey.

The other prayer of the bill that the complainant may have indemnity against the wife's claim of dower, involves an inquiry into the nature of the contract to convey, the impediments to its full execution, and the remedies which may be afforded in case it be found that exact compliance with its obligations is impossible. The first point to be determined on this branch of the case is whether, by the terms of his contract, Mr. Stephany undertook to convey a fee-simple estate.

The clause whereby Mr. Stephany agrees that Mr. McCormick shall have the right to buy, does not specify what estate shall be conveyed nor the character of the title by which it shall

pass. In cases such as this, where there is an undoubted under-taking to convey, but no definite mention of the estate to be conveyed, the parties must be decreed to have dealt with the premises according to the usual and ordinary meaning in which their language, when applied to the circumstances of the case, would be understood. At the time of the making of the agreement, Mr. McCormick was in the exclusive possession of the premises under his lease from Stephany. The agreement was, that if Stephany found a purchaser, McCormick should have, during the continuance of the lease, the option to buy at the price of $12,000. To buy a house for $12,000, in ordinary parlance, means that for the $12,000 the purchaser should become the absolute owner of the house, not of a part interest in it, nor subject to some unmentioned superior charge, which might exceed the whole purchase price. It is a fair construction of the terms of the contract to hold that Mr. Stephany intended to sell and Mr. McCormick expected to purchase such an absolute interest in the premises. In no other way could Mr. McCormick protect the good will of the business which he had there built up (annual sales of which are proven to have amounted to $45,000), or secure to himself the benefits of the improvements which he had made to the premises at his own expense. I refer to the painting, papering, remodeling of floors and interior work done by Mr. McCormick, which savor of the realty. So also the fittings and fixtures of the saloon, which cost Mr. McCormick a large sum of money, would realize but a small amount as removable fixtures. All these substantial interests could only be protected by an agreement that Mr. McCormick should purchase a fee. Both parties acted in making the agreement with this situation of affairs in their knowledge and consideration.

It is conceded that a contract giving a right to purchase, is obligatory upon the vendor to convey some estate in the premises, and if the estate to be conveyed is not held to be a fee, it is very difficult to select the particular estate which is agreed to be conveyed. It could hardly be limited to the estate which the proposed vendor had in the premises (which might be an undivided share, a term of years, an estate for life, or some inferior

McCormick v. Stephany.

holding), unless the particular estate which the vendor held was brought to the attention of the parties, and that they dealt with reference to that interest. There is no more reason to hold that a general agreement to convey is limited to that unmentioned estate which the vendor had to sell, than there is to hold that it extended to the unmentioned estate which the vendee expected to buy. If the agreement does not specify the estate to be conveyed and there is no other evidence which defines it, the only reasonable construction which can be given to it is that it undertakes to convey a fee. It must either be held to be a contract to convey an unlimited estate, or the court must, without expression of the parties, select the limitations and force them into the contract.

In England, where a defendant agreed to sell without naming what estate he would convey, his undertaking was held by Lord Abinger and Barons Parke and Alderson to be for the conveyance of a fee. *Hughes* v. *Parker, 8 Mees. & W. 243.*

In *Hawralty* v. *Warren, 3 C. E. Gr. 127,* Chancellor Zabriskie held that the words "*shall have the privilege of purchasing,* although not so comprehensive as a positive agreement to convey, which is settled to mean (when not qualified by word or circumstances) to convey a fee, yet are sufficient in equity to entitle the complainant to a conveyance of all the estate at the time of the contract." The learned chancellor declined to decide whether the italicized words would be sufficient to compel the defendant to procure a good title, or make compensation for encumbrance. The reason for his refusal was that in that case the complainant required a marketable title, and offered to take that only, and as the wife refused to release her dower a marketable title could not be given. It is somewhat difficult to draw any distinction as to the estate which is agreed to be passed, between two contracts, in one of which A agrees that he will convey to B, and in the other, that B may purchase from him. In both there is an undertaking to convey. In neither is there any specification of the estate to be transmitted.

The performance of either contract would seem to call for a conveyance of an unlimited estate.

In *New Barbadoes* v. *Vreeland, 3 Gr. Ch. 162,* the agree-

ment was to grant the lands and to execute sufficient deed for the same, and it was held that the parties could have contemplated nothing short of a conveyance in fee. In *Lounsbery* v. *Locander, 10 C. E. Gr. 557,* the agreement was that Locander should "have the refusal of a five-acre lot." It was held by the court of appeals (at *pp. 557, 558*) that the circumstances attending the making of the contract, the price agreed to be paid, &c., indicated that the agreement was a contract to convey a title in fee clear of encumbrance, &c.

In the case in hand, all the incidents attendant upon the transaction tend to show that Mr. McCormick expected to purchase and Mr. Stephany intended to convey a fee. Mr. McCormick's interest in the good will of the place in which he had built up a valuable trade, and his expenditures on permanent improvements and fixtures required such an estate. Mr. Stephany fixed the price at $12,000, and his letters indicate that he had in mind no limitation of the estate to be conveyed. He evidently esteemed his agreement with Mr. McCormick to be of the same effect as that which he made with Haines. Both were intended to pass an absolute interest in the whole property. Such a construction of their contract accords with the usual mode of dealing with such properties, with the common understanding of such words in agreements for conveyance, and with the action of the parties in this case. When the contract was made neither party doubted, nor had any reason to doubt, that when the time came to carry it into effect, Mrs. Stephany would release her dower. The proof indicates that she would in fact have released it if Mr. Stephany had desired her to do so, and that her unwillingness to release to Mrs. McCormick arose subsequently to the making of the McCormick agreement, because Mr. Haines had offered a larger price for the property.

Under all the circumstances attending the making of the contract to convey to Mr. McCormick it must be held to be an undertaking to convey a fee-simple estate.

The defendants contend that they are unable to convey such an estate, because Mrs. Stephany's dower right is outstanding and superior to their title; that she is not bound by the con-

tract, and refuses to release. As above shown, no decree can be made requiring Mrs. Stephany to release her dower.

The complainant further insists that if she cannot have a decree for the conveyance of Mrs. Stephany's dower right, she may have one for indemnity against it.

There is no question that, in a proper case, this court, in enforcing the specific performance of a contract to convey lands, can decree that the purchase-money be used to pay outstanding liens required by the contract to be satisfied to clear the title; or may, if necessary, direct compensation to be made for any portion of the lands agreed to be conveyed, to which the vendor is unable to make title, or order indemnity to be given against the assertion of outstanding liens or charges which cannot be satisfied. *Fry Spec. Perf. 1223 et seq.; 1 Pom. Eq. Jur.* § *237, note 3; Young* v. *Paul, ubi supra,* and cases there cited. These remedies are incident to the enforcement of the contract to convey, and are to be used with circumspection, according to the requirements of each particular case.

An exception has been made, in this state, with respect to the protection which, on specific performance, will be given a vendee against a wife's inchoate right of dower. All the cases appear to agree that indemnity against this claim will not be decreed unless it be shown that the husband has fraudulently induced the wife to refuse to release. *Young* v. *Paul, 2 Stock. 401,* in both this court and the court of appeals, where the whole subject is most instructively discussed; *Hawralty* v. *Warren, 3 C. E. Gr. 124; Reilly* v. *Smith, 10 C. E. Gr. 158.*

The principle upon which these cases rest is that the wife, in the enjoyment of her dower right, is a free agent; she cannot be compelled to release. If the husband be decreed to obtain her release, it would be an interference with her freedom of choice. Indemnity against her dower right was refused for the kindred reason that this would put her under the strain of his influence to force her to release, in order that he might be relieved from the indemnity. Where, as in *Young* v. *Paul,* it was shown that the wife had assented to the contract to convey, though she did not sign it, and that the husband had fraudulently induced her to refuse to release her dower right,

indemnity was allowed, upon the assumption that her husband was preventing her from removing the cloud on the title, and he might, therefore, justly be ordered to secure the vendee against it. This exception to the rule that a vendor who contracts to convey a complete title, will, when the circumstances of the case justify it, be ordered to indemnify against a claim which cannot be discharged, though enforced in this state, has not been accepted in many other states. The reasonableness and justice of the exception, under modern conditions, has recently been doubted in our own state. *Borden* v. *Curtis, 3 Dick. Ch. Rep. 129.*

The force which is to be given to the line of cases referred to applies, however, only when the complainant asks that indemnity be given by a husband against the assertion of the inchoate dower of the wife *while both are living*. An indemnity thus given, while the relation of marriage continues, might subject the wife to some danger of compulsion on the part of her husband, seeking to relieve himself from the indemnity. But where indemnity is asked *after the husband's death,* and his compulsion of the widow is impossible, the reasons for refusing indemnity disappear. The widow's dower is unaffected by the decree, and the peculiar relationship of husband and wife having terminated, indemnity may be required of the heirs against the assertion of the dower right, without subjecting the widow to any undue influence tending to overcome her free will.

A decree indemnifying the complainant against the assertion of Mrs. Stephany's dower right appears, under the circumstances of this case, to be the only mode in which the complainant can be secured in the enjoyment of the benefits of the contract to convey. Mrs. Stephany's declared objection to the McCormick contract is that the price was too low, and it is quite evident that she is using her position of advantage to secure for her children a higher price, despite her husband's agreement to sell at the lower one. The law cannot compel her to convey her interest, and will at all times protect it. Her children, however, stand in the place of their father, who contracted to sell the property and to pass an absolute estate at a named price. They ought not to be permitted, by their

mother's interposition, to obtain an advantage which deprives Mr. McCormick's estate of all the benefits of his bargain, and defeats his just expectation that he was, by it, saving the good will of the business which he had built up and the value of the improvements which he had put upon the property.

This conclusion renders it unnecessary to examine that phase of the case in which the complainant alleges, and seeks to prove, that Mrs. Stephany was induced to refuse to release her dower by the fraudulent persuasion of her husband in his lifetime, and of his heirs since his death.

I will advise a decree for the specific performance of the contract as above indicated, and that an indemnity be given against the assertion of the wife's dower right by making, as part of the purchase-money, a mortgage upon the premises, to be executed by the complainant to the holders of the title, in such an amount and with such conditions to indemnify and save harmless against the assertion of the dower right, and as to the payment of principal and interest, as a master (conforming as nearly as possible to the rules and practice of this court in ascertaining the value of such a dower right) may, upon hearing the parties, report to be equitable and just.