CHARLES R. MYERS

v.

ELIZA J. METZGER et al.

[Filed April 13th, 1901.]

1. When a deed is made conveying a lot of land for $14,000 and coincidently, for the same consideration, a separate agreement is made by the grantors in the deed to convey to the grantee an adjoining piece under certain circumstances, the deed and the agreement will be considered in' this court as one contract, one consideration operating as the purchase-money of both.

2. Such an agreement is not a mere proposal or option, from which the owner of the land may withdraw at his choice, keeping the consideration. It is the purchase of a right upon compliance with the terms named, to buy the lands referred to in the agreement.

3. An agreement of the owners of a certain lot that they will not sell it without first notifying an adjoining owner of the intention to sell, and giving him the privilege of buying the ground at a fair market price, becomes enforceable when the owners of the lot, without notifying the adjoining owner, cause a sale of it to be made by partition proceedings in this court. Such proceedings are a manifestation of an intention to sell.

4. What is a fair market price is a matter discoverable by testimony on the point. It can be made certain by evidence, and its uncertainty is therefore no ground on which to refuse a decree for performance.

---

On bill, answer and stipulation as to facts.

This bill is filed by Charles Myers to compel specific performance of an agreement, made between the executors and

devisees of Emanuel Metzger and one Mrs. Ellen Wright, a copy of which is annexed to the bill of complaint, and which is in these words and figures:

"*Martha E. Metzger, to Ellen E. Wright. Agreement:*

"Whereas Mrs. Ellen Wright has recently purchased from the executors of Emanuel Metzger, deceased, a tract of land fronting 500 feet on the easterly side of New Jersey Ave., Atlantic City, State of New Jersey, for the sum of $14,000. In consideration of said purchase, we, the executors of the said Emanuel Metzger, do hereby agree with the said Ellen E. Wright, her heirs and assigns, that we will not sell any portion of the ground oceanward from the above mentioned tract without first notifying Mrs. Wright, her heirs or assigns, of our intention and giving them the privilege of buying the ground at a fair market price, also that we will not build or allow to be built any building whatsoever upon the said ground while under our control or held as part of the estate of the said Emanuel Metzger.

Witness at signing,

"JESSE N. ROKE,
"V. E. CERCHAMBAULT.

"MARTHA M. METZGER,
"JOHN HUNTER,

"Dec. 9, 1884.                                        *Executors.*

"EMMA C. METZGER,
"MARY C. GOULD,
"J. CLIFFORD GOULD,
"ELIZA J. METZGER,
"KATE E. METZER,
"MARTHA M. METZGER, JR.

"Rec'd & Recorded Jan'y 1, 1885.

"A. L. DOWN, *Clerk.*"

The complainant alleges that the agreement in question was made coincidently with, and attendant upon, a deed made by the executors and devisees of Metzger to Mrs. Wright, by which they conveyed to the latter the premises beginning in the easterly line of New Jersey avenue, four hundred and fifty feet southerly from the southerly line of Oriental avenue, and extending southerly five hundred feet, and then easterly, between parallel lines that width, one hundred and seventy-five feet. That was the inland or southern portion of the ground, and the piece included within the agreement lies between that last-described ·piece and the Atlantic ocean. After the agreement

had been made with Mrs. Wright, the land which the Metzgers had conveyed to her, and also her rights, under the agreement, in the oceanward lot, came, by intermediate conveyances and assignments, to the complainant in this cause, the deed to him being made in 1895. The oceanward lot remained in the ownership of the Metzgers, without change of title, from the time of the making of the agreement, in September, 1894, up to the year 1899. In that year, Miss Eliza J. Metzger filed a bill in chancery for the partition of their lands, making parties thereto her brothers and sisters and their husbands and wives, and such proceedings were had in that case that the oceanward lot, described in the agreement, was sold by a master and bought by Miss Eliza J. Metzger as a separate lot. The complainant (Myers) appeared at that sale, and gave notice of the equities which he claimed resided in him under the agreement.

Miss Eliza J. Metzger was one of the Metzger devisees, was herself a party to the agreement, and was the complainant in the partition suit. After she had bought the property at public auction, the complainant (Myers) claimed that the time had arrived when he was entitled to have a performance of the agreement, by a conveyance to him of the property at a fair market price. That price, he claims, may fairly be fixed at $20,000, and he has offered to take a conveyance of the property from Miss Metzger and the other parties interested for $20,000. They refused to convey, first, on the ground that he had no right to such a conveyance under the agreement, * * * because it was without consideration; and secondly, that the sum offered ($20,000) was far below the value of the property at a fair market price.

*Mr. Clarence L. Cole,* for the complainant.

*Mr. Allen B. Endicott,* for the defendants.

GREY, V. C. (orally).

In the argument of the cause counsel for the defendants contends that the agreement is of no binding force, because

there was no consideration for it.   On examination it appears that it was made coincidently with the deed for the upland piece, of which the lot in question is the ocean front.   The stipulation shows that the agreement was made on the 9th of December, 1884, and that the land in the deed was coincidently conveyed to Mrs. Wright.   It is recited in the agreement that, in consideration of the purchase of the land named in the deed, the executors of Metzger and his heirs, and the other parties signing the agreement, agree that they will not sell any portion of the ground oceanward from the tract, conveyed by the deed, without first notifying Mrs. Wright, her heirs and assigns, of their intention, and giving them the privilege of buying the ground at a fair market price.

Here is a clear showing that the consideration named in the deed for the upland lot was the inducement which led to the making of the agreement to convey the lot to the oceanward of it.   The stipulation shows that the transaction was one and the same, although evidenced by different instruments.   The deed and the agreement were given for the same consideration. The rule is well settled that where several instruments relate to each other, and are made by the same parties, at the same time, touching the same or kindred subject-matter, they should be dealt with and considered as one instrument, unless something on the face of them indicates a different intent.   That situation existed in this case, and makes it plainly apparent that the consideration paid for the deed was the consideration for the agreement.   That was clearly the intent of the parties. The result, then, is that, by the purchase-money paid for the deed, the grantee therein (Mrs. Wright) bought the land described in the deed and also bought whatever rights came to her under the agreement.   It therefore appears that there was a consideration for the agreement.   The principle of such contracts is discussed in *McCormick* v. *Stephany, 48 Atl. Rep. 25.* It is not a mere option from which the owner of the land may withdraw at his choice, keeping the consideration, but it is a purchase of a right, upon compliance with the terms named, to buy the lands referred to in the agreement.

The defendants contend that there is no description of the

ground to be conveyed. The description of land, by a contract for conveyance, does not need to be set forth with the precision of metes and bounds and monuments. If the contract designates the land with such reasonable certainty that a person may, by going upon it, ascertain its bounds from the contract, it is sufficient. That characteristic appears in this agreement. There is a reference to the purchase, by Mrs. Wright, of a tract of land fronting for five hundred feet on the easterly line of New Jersey avenue, in Atlantic City. It is easy to locate that tract. The lot dealt with in the agreement is all the land lying oceanward of the land purchased by Mrs. Wright. There would be no difficulty in locating the oceanward lot by a person of ordinary intelligence, certainly none if it were located by a competent surveyor.

The further criticism is made that there is no time fixed for the performance of the agreement. There is no definite day named for its performance. But there is a clear undertaking that Mrs. Wright, the purchaser of the landward lot, should not be subjected to the great injury which would result if the oceanward lot were sold to someone else, and her lot thus cut off from the ocean view and breezes, without giving her notice of the purpose to sell and the privilege of buying the oceanward lot at a fair market price. That means that the Metzgers held the property at the call of Mrs. Wright and her assigns whenever they (the Metzger party) were ready to sell. This, it seems to me, is the first question of any significance in this case—whether, when this bill was filed, the time had arrived when Mr. Myers, holding Mrs. Wright's equity in the oceanward lot, had the right to demand a conveyance at a fair market price. The agreement of the parties was that they would not sell any portion of the oceanward lot without first giving to Mrs. Wright, or her assigns, the privilege of purchasing it at a fair market price. The proceeding by which Miss Eliza J. Metzger, the complainant in the partition suit, compelled a sale, is claimed by Mr. Myers to have been an exhibition on the part of the Metzgers of a willingness to sell the lot. There is no pretence that they notified Mr. Myers, Mrs. Wright's representative, nor is there any claim that they

notified anybody. The defendants deny that the partition proceeding was a sale. They insist that, in the final result, the proceedings in the partition suit did not change the interests of the parties, and that they are now the same as they were before the sale. The proceedings in the partition suit are, by the stipulation, submitted as evidence in this cause. They indicate the wish of the applying party (and that applying party was Eliza J. Metzger, one of the parties to the agreement, and the person who subsequently purchased the piece of land in question) to have the land divided, or, if it could not be divided, that it be sold. All the Metzger family appear to have assented to this, and the lot was sold under the partition decree. The contention of the defendant is, that although the parties asked that the land should be sold, and the court decreed that it be sold, and the master reported that it was sold, and a deed has been executed in accordance with that decree, conveying the lot in question, yet still the land was not sold. That position cannot be maintained. The effect of the public auction by the master was a sale, not only in law, but in fact, for the reason that when the master put the property up at public sale, he left it to the choice of the world as to who should be the purchaser. It was an act which came about at the instance of Miss Eliza J. Metzger, who was the complainant in the partition suit, to which the others of the contractors appear to have assented, and they have since accepted the benefits of it. The master stood for them, and was acting for them, and his sale gave, as stated, an opportunity to anybody in the world to become the purchaser upon bidding enough. That subjected Mr. Myers to the danger, if the lot had been bought without notice of his claim, of losing his right to purchase. He protected himself by attending the master's sale, and giving public notice of his equity. This, of course, was not necessary as against Miss Metzger, because she was a party to the contract held by Myers when she became the purchaser under the master's sale. The true intent of the contract is, that Mr. Myers' right to purchase accrued whenever the Metzgers concluded to sell. That conclusion was manifested when the contractors in the contract actually did sell the land under

the partition proceedings, and it could not afterwards be disavowed. That Miss Metzger bought in the property herself, was purely fortuitous. The title was taken out of all of the parties and vested in her, and what she subsequently chose to do with it cannot enter into the question here in dispute. She became the purchaser by bidding more than anybody else, but she took as if she were an entire stranger, and, when she acquired title, could deal with it as she chose. There was such an intention to sell that Mr. Myers might assert his privilege to purchase at a fair market price.

It is claimed on the part of the defendants that the remedy of the complainant, if there was a sale, is at law. The remedy at law would be wholly inadequate. Under the contract the complainant has the right to purchase the lot lying to the oceanward of his previous purchase. His suit would enable him to recover only such damages as he suffered by reason of the fact that he was not first notified by the contractors of their intention to sell the land, and that he was not given the privilege beforehand of buying the ground at a fair market price. Such damages would be wholly inadequate to satisfy him for the loss of his right to purchase the lot. He is the owner of the land lying landward of the piece covered by the contract. The lot under the contract is the piece over which he must have his access to the ocean. It is perfectly evident that this property between his land and the ocean was especially valuable to him, because of its adjacency to his other lands and of his means of access therefrom to the ocean. These characteristics created substantially all the value of the contract to him. A suit for damages would not get him the land, but only compensation for the damage that he suffered by non-performance of the contract. The injury to him by being cut off from the ocean view and access would be continuous in its nature. He would not only lose this use of the lot for his other property, but the ownership of the land in somebody else would subject him to the danger of the erection of some obstruction on the oceanward lot, which would completely cut him off from the ocean. In my view no damages would, in any adequate way, satisfy him.

The other question raised by the bill and disputed in the answer is, what is a fair market price for the property? I have not discussed this question. It is a matter for further inquiry and the taking of further proof. Nothing in the stipulation enables me to decide it, and I am not willing to pass upon it at all in the present phase of the case. It is a matter sharply limited to one point, and for its proper exposition calls for testimony of witnesses on the spot. It should be referred to a master to ascertain and report what, on the day when Mr. Myers demanded conveyance, was a fair market price for the lot of land lying to the oceanward of the 'tract of land beginning in the easterly line of New Jersey avenue, four hundred and fifty feet southerly from the southerly line of Oriental avenue, and extending southerly five hundred feet, then easterly, between parallel lines of that width, one hundred and seventy-five feet. The last-described tract of land is the property of the complainant. The oceanward tract is the lot here in suit, purchased by Miss Metzger at the master's partition sale. The master may take such testimony as either party may see fit to offer upon the single question of the fair market price of the oceanward tract, at the time of Myers' offer to purchase it. All further equities are reserved until the coming in of the master's report.

I will hear counsel upon the selection of the master.