JOHN W. KEOGH, Appellee, *vs.* ROBERT B. PECK *et al.* Appellants.

*Opinion filed February 17, 1925—Rehearing denied April 20, 1925.*

1. SPECIFIC PERFORMANCE—*what is sufficient prima facie evidence of notice of exercise of option.* Where a long-term lease gives the lessee an option to purchase, a notice of election to purchase, mailed by the lessee's assignee to the lessor's successor in title at his usual address within the time required, is sufficient where the terms of the lease are made binding on the heirs or assigns of the parties, notwithstanding a provision that all notices to either party may be sent to certain addresses given in the lease, the address of the lessor being given but not that of his successor in title; and proof of the mailing of the notice to the latter at his usual place of address is *prima facie* evidence that he received the notice in due course of mail.

2. SAME—*when court will take judicial notice as to delivery of mail.* In a suit for specific performance of an option to purchase which requires notice of the election sixty days prior to the consummation of sale, in the absence of any evidence of actual delay the court will take judicial notice that a letter mailed during business hours in Chicago on February 21 would be delivered in Philadelphia in the usual course of the mail more than sixty days prior to April 29, the date fixed in the notice for consummation of the sale.

3. SAME—*when covenantee's right to a conveyance is not defeated by nature of demand.* Where a covenant to convey does not entitle the covenantee to a deed with full covenants his right to a conveyance will not be defeated because he demands such a deed, if the covenantor, in refusing, does not object on that account and wholly denies the covenantee's right.

4. SAME—*in absence of fraud, courts will not consider wisdom or folly of contract.* Where parties are competent to contract and enter into a contract fairly and understandingly, for a consideration and without fraud, courts have no concern with the wisdom or folly of the contract.

5. SAME—*general rule as to when equity will enforce contract for conveyance.* A court of equity, as a matter of right, will enforce a valid contract for a sale of land where it was fairly and understandingly entered into and no circumstances of oppression and fraud appear.

6. SAME—*increase in value of property is no excuse for nonperformance.* The fairness or hardship of a contract will be considered with reference to the time when the contract was made unless the delay in carrying it out is caused by the person seeking performance, but the mere fact that the value of property contracted for has increased or diminished since the contract was executed will not ordinarily warrant a refusal to carry out its terms, in the absence of circumstances indicating fraud or bad faith.

7. LEASES—*what is waste.* Waste is a spoil or destruction in houses, lands or tenements, to the damage of the reversioner or remainderman.

8. SAME—*general rule as to when an action for waste arises.* Where no other contract exists between the parties except a lease, the reversion and re-possession in the landlord after the termination of the lease and the ending of the particular estate is certain and irrevocably fixed by the nature of the contract, and for any wrongful act done causing an injury to the reversion a right of action immediately ensues.

9. SAME—*liability for waste is suspended where lessee has option to purchase.* Where a lessee is given an option to purchase the premises at any time before the expiration of the lease his liability to a suit for waste is suspended until it is known whether or not he will exercise the option to purchase, as it is not certain until that time whether the estate will ever revert to the landlord.

10. SAME—*when commission of waste cannot be set up to defeat specific performance of option to purchase.* Where a lease gives a lessee or his assignee an option to purchase the premises, the commission of waste cannot be set up as a defense to a suit for specific performance of the option after the assignee of the lessee has made his election to purchase, where the lessor's successor in title, who is defending the suit, had declared no forfeiture on account of waste prior to the exercise of the option.

11. SAME—*what determines whether a covenant runs with the land.* The test whether a covenant runs with the land or is merely

personal is whether the covenant concerns the thing granted and the occupation or enjoyment of it, or is a collateral and personal covenant not immediately concerning the thing granted.

12. SAME—*when a covenant runs with the land.* A covenant runs with the land where it concerns the land and the enjoyment of it, where its benefit or obligation passes with the ownership, and where its performance or non-performance affects the nature, quality or value of the property demised or the mode of its enjoyment, independent of collateral circumstances.

13. SAME—*option to purchase is transferable as property.* A contract with a lessee for an option to purchase, based upon the consideration of the lease, is property and is transferable as such.

14. SAME—*option to purchase is a binding contract when included in lease.* A provision in a lease giving the lessee an option to purchase the premises constitutes a binding contract enforceable in equity, as any sufficient consideration, such as a higher rent, will make such contract binding.

15. SAME—*lessee's option to purchase runs with the land and may be enforced by his assignee.* A provision in a lease giving the lessee an option to purchase the premises runs with the land where the lease is made binding on the heirs and assigns of both parties, and being a complete, executed contract for a sufficient consideration it may be specifically enforced by the assignee of the lessee against the lessor's successor in title.

16. SAME—*an option to purchase does not create estate in land.* No title, legal or equitable, is granted to the holder of the option by an option agreement.

17. SAME—*options are not invalid as contrary to rule against perpetuities.* Optional contracts, either in deeds or in long-term leases, giving an optional right of forfeiture and re-entry for covenant broken or a right of renewal are not invalid as being contrary to the rule against perpetuities.

18. SAME—*option to purchase in long-term lease does not violate rule against perpetuities.* An option in a long-term lease giving the lessee or his assigns the right to purchase the premises at any time during the continuance of the lease does not violate the rule against perpetuities, as the optional agreement runs with the land and does not suspend the power of alienation, but the lessor can convey the reversion or the lessee can convey his estate for years, or the estates can be united by joint action of the two parties.

19. CONTRACTS—*difference between a sale of land and a contract to sell.* A sale of lands is the actual transfer of the title from the grantor to the grantee by an appropriate instrument of conveyance, while a contract or agreement to sell is a contract to

be performed in the future, which, if fulfilled, results in a sale, the former being an executed contract while the latter is executory.

20. OPTIONS—*what is an option—sale.* An option is neither a sale nor a contract to sell but is merely a contract by which the owner of property agrees with another person that he shall have the right to buy his property at a fixed price within a certain time, and while the sale of an option is an executed contract, the lands, or an interest therein, are not sold.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

KING, BROWER & HURLBUT, for appellants.

W. T. ALDEN, C. R. LATHAM, H. P. YOUNG, CHARLES MARTIN, and H. C. LUTKIN, for appellee.

Mr. JUSTICE HEARD delivered the opinion of the court:

This is an appeal from a decree entered by the superior court of Cook county in favor of appellee in accordance with the prayer of his bill of complaint, ordering the specific performance by appellants of an option contained in a 99-year lease made by appellants' predecessor in title to appellee's assignor for the sale to the tenant of the fee of the premises for $10,000 at any time during the term of the 99-year lease when the tenant should give notice of his election to purchase,—at least sixty days prior to the date fixed for the consummation of the sale.

March 26, 1900, Comfort E. Peck, who was then the owner of the premises in question, made a written demise of the premises to James B. Keogh for a term of 99 years, the term beginning May 1, 1900, and ending April 30, 1999, at a rental of $500 per annum, payable quarterly. December 6, 1911, Comfort E. Peck conveyed the premises to Robert B. Peck, one of the appellants, and on May 3, 1922, after the filing of the bill of complaint herein but before service of process, Robert B. Peck conveyed the same to the appellant Samuel B. King upon some secret trust. On June 1, 1915, James B. Keogh, the lessee, assigned to ap-

pellee all his right, title and interest in the lease and agreement, and since that time appellee has been in the exclusive possession of the premises under the lease. February 21, 1922, appellee having elected to exercise his option to purchase the premises, deposited in the United States mail, postage prepaid, a written notice of such election to Robert B. Peck, designating April 29, 1922, as the date for the consummation of the purchase of the property. The envelope was addressed, "Robert B. Peck, care of the Bank of North America, Philadelphia, Pa."

The eleventh paragraph of the lease provided: "Each party to this lease shall, upon the execution and delivery hereof, furnish to the other party a name and address in the city of Chicago to which all notices and communications required or provided for by this lease to be given to the party furnishing such name and address may be directed." Upon the lease is the endorsement:

"I hereby designate 'Comfort E. Peck, Nos. 169-173 Ontario street, Chicago, Illinois,' as my address under paragraph 11 of the foregoing indenture.
"Chicago, March 26, 1900.                      COMFORT E. PECK."

It is contended by appellants that the notice of election to purchase mailed by Keogh to Peck was invalid because it was not addressed to the place designated in the lease, and that there is no proof in the record that the notice was received by Peck sixty days before the time fixed for the consummation of the transaction. After the purchase of the premises by John W. Keogh he did not furnish at any time, in accordance with the eleventh paragraph of the lease, to the tenant or to his assignor, a name and address in the city of Chicago to which notices and communications required or provided for by the lease should be directed. Comfort E. Peck died in 1915. Had the appellee attempted to give notice of his election to purchase by mailing a notice thereof addressed to Comfort E. Peck, a man who had been dead for more than five years, and had given

no other notice, we do not think that it would be contended by anyone that such notice would be sufficient. The eleventh paragraph was inserted for the convenience of the parties. It does not provide that all notices must be sent to the address given, but provides for the furnishing of a name and address to which notices "may be directed." This provision is not mandatory, and a notice addressed to Robert B. Peck at his usual address would be a sufficient compliance with this paragraph. The evidence shows that Peck's usual address was care of the Bank of North America, Philadelphia, Pa., and the notice in question was therefore properly addressed. Robert B. Peck did not testify and there is no proof in the record that the notice was not received by him in due course of mail. Proof of the mailing of the notice addressed to him at his usual place of address is *prima facie* evidence that he received the notice in due course of mail, the evidence not showing the contrary. (*Young* v. *Clapp*, 147 Ill. 176; *Bickerdike* v. *Allen*, 157 id. 95.) There is no evidence in the record showing the time required for the transmission and delivery of a letter from Chicago to Philadelphia, except that a person can travel from Chicago to Philadelphia in less than a day. In the absence of any evidence of actual delay the court will take judicial knowledge that a letter written during business hours in Chicago on February 21, 1922, would be delivered in Philadelphia, in the usual course of the mail, more than sixty days prior to April 29, 1922. *Ætna Indemnity Co.* v. *Fuller*, 73 Atl. 738; *German American Bank* v. *Cramery*, 171 S. W. 31.

Appellee's notice to Peck called for a warranty deed from Peck to appellee, "subject only to the provisions of the said lease," and appellants contend this is a variation from the terms offered in the option, which excepted from the covenants of warranty liens or taxes, which by the terms of the lease the lessee was to pay, or any liens on the property created by the lessee. There is no variation,

the term "subject only to the provisions of the said lease" being broad enough to cover any exceptions or limitations as to the deed provided for in the lease. Even if it were to be held that appellee's demand was not for a deed in strict compliance with the covenants of the lease, this would not defeat the present action for the reason that Peck did not place his refusal to convey upon this ground, but before the time fixed for the consummation of the sale Peck brought suit in ejectment for the premises against appellee on the ground that the lease, and consequently the contract for purchase, had been forfeited. Where a covenant to convey does not entitle the covenantee to a deed with full covenants, his right to a conveyance will not be defeated because he demands such a deed, if the covenantor, in refusing, does not object on that account and wholly denies the covenantee's right. *Locander* v. *Lounsbery,* 24 N. J. Eq. 419; *McCormick* v. *Stephany,* 48 Atl. 25; *Scott* v. *Shiner,* 27 N. J. Eq. 187.

The premises in question were situated on the southeast corner of Ohio and Pine streets, in Chicago. At the time of the execution of the lease and option the neighborhood in which the premises were located was a desirable residence neighborhood and the premises were then worth about $9000. Between that time and 1917 it deteriorated to a poor boarding-house neighborhood. Thereafter what is known as the Michigan avenue improvement was made, the name of Pine street was changed to North Michigan avenue, and the ground value of the premises was greatly enhanced by the improvement. It is contended by appellants that at the time of the making of the contract neither of the parties had in contemplation the change in conditions, and that therefore specific performance should not be awarded. Where the parties are competent to contract and enter into a contract fairly and understandingly, with the wisdom or folly of their contract, made for a consideration and without fraud, courts have no concern. (*Florida Ass'n*

v. *Stevens,* 61 Fla. 598; *Mizill Live Stock Co.* v. *McCaskill Co.* 59 id. 322.) The object of courts of equity, as well as courts of law, is the enforcement of contracts rather than their evasion, and where a valid contract exists for a sale of land a court of equity will enforce it as a matter of right where it was fairly and understandingly entered into and no circumstances of oppression and fraud appear. (*Miedema* v. *Wormhoudt,* 288 Ill. 537.) In considering the fairness or hardship of a contract the usual rule is to decide those questions with reference to the time when the contract was made, unless the delay in carrying it out is caused by the person seeking performance. The mere fact that the value of the property contracted for has increased or diminished since the contract was executed ordinarily will not warrant a refusal to carry out its terms, in the absence of circumstances indicating fraud or bad faith. *Anderson* v. *Anderson,* 251 Ill. 415.

During the making of the Michigan avenue improvement, by reason of the change of the grade of the street and other conditions, the premises became unfit for habitation and were vacant for some time. The evidence shows that for some years the receipts from rentals were not sufficient to pay the taxes and assessments. After the improvement was made the locality changed from a residential to a business neighborhood, and appellee, to secure a revenue from the premises in any way commensurate with the changed conditions, caused the demolition of the house on the premises and entered into contracts for the erection of a two-story business building thereon. It is contended by appellants that in so doing he was guilty of waste, in violation of the terms of the lease, and that for that reason he cannot obtain specific performance of his contract. Waste is defined to be "a spoil or destruction in houses, lands or tenements, to the damage of him in reversion or remainder." (*Davenport* v. *McGuen,* 13 Ore. 6.) A reversion is defined by Blackstone to be "the residue of an estate

left in the grantor, to commence in possession after, the termination of some particular estate granted out by him." (2 Blackstone's Com. 175.) Where no other contract exists between the parties but a lease, the fact that the estate shall revert after the termination of the lease and the residue left in the landlord shall commence in possession after the particular estate is ended is certain and irrevocably fixed from the nature of the contract, and hence for any wrongful act done which then causes an injury to the reversion, a right of action immediately ensues. Where, however, in a lease a tenant is given an option to purchase the premises at any time before the expiration of the lease, while the tenant, until the privilege of purchase is exercised, remains a mere tenant, subject to the same obligations as other tenants and answerable for any waste committed by him, still his liability to a suit for waste is suspended until it is known whether or not he will avail himself of his privilege. The fact that the estate will ever revert to the landlord is not fixed and certain, and while the legal right to exercise the option remains, there can during such term be no act of waste committed which the tenant cannot avoid by the exercise of his right to purchase. (*Powell* v. *Dayton,* 16 Pac. 863; 16 R. C. L. 805.) In the present case, appellee having exercised his election to purchase the premises, the demolition of the building in question is immaterial to appellants and is no defense to appellee's suit for specific performance. Had Peck declared a forfeiture of the lease on the ground that appellee had failed to keep the covenants of the lease prior to appellee's election to purchase an entirely different question would have arisen, but at the time appellee gave notice of his election to purchase no forfeiture had been declared and the lease and the contract of purchase were both in full force and effect. *Bell* v. *Wright,* 1 Pac. 595; *Sanders* v. *Bryer,* 152 Mass. 141.

The option agreement is contained in the fifteenth paragraph of the lease. A portion of the sixteenth is as fol-

lows: "It is mutually covenanted and agreed by and be-
tween the parties hereto, that each and every of the expres-
sions, phrases, terms, recitals, conditions, provisions, stipu-
lations, admissions, rights, privileges, promises, agreements,
requirements, covenants and obligations contained and ex-
pressed in this lease shall at all times be construed as cove-
nants running with the land, and shall be held to apply to
and shall bind or inure to the benefit of, as the case may
require, not only the parties hereto, but each and every of
the heirs, legal representatives and assigns of the party of
the first part and each and every of the heirs, legal rep-
resentatives and assigns of the party of the second part;
and wherever in this lease the word 'lessor' is used, (ex-
cept where otherwise expressly stated and except where the
sense of the context otherwise requires,) said word shall
be understood to embrace in meaning also the heirs, legal
representatives and assigns of the lessor; and wherever in
this lease the word 'lessee' is used, (except where otherwise
expressly stated and except where the sense of the context
otherwise requires,) said word shall be understood to em-
brace in meaning also the heirs, legal representatives and
assigns of the lessee." It is contended by appellants that
notwithstanding this language in the lease the right to ex-
ercise the option was not such a right as passed to appellee,
and that the option agreement in question was not such an
agreement as to entitle appellee to its specific performance.

The test as to whether a covenant runs with the land
or is merely personal is whether the covenant concerns the
thing granted and the occupation or enjoyment of it or is
a collateral and personal covenant not immediately concern-
ing the thing granted. If a covenant concerns the land and
the enjoyment of it, its benefit or obligation passes with
the ownership, but to have that effect the covenant must re-
spect the thing granted or demised and the act to be done
or permitted must concern the land or the estate conveyed.
In order that a covenant may run with the land its perform-

ance or non-performance must affect the nature, quality or value of the property demised, independent of collateral circumstances, or must affect the mode of enjoyment. (*Purvis* v. *Shuman*, 273 Ill. 286; *Chicago Title and Trust Co.* v. *Fine Arts Building*, 288 id. 142; *Atwood* v. *Chicago, Milwaukee and St. Paul Railway Co.* 313 id. 59.) An option contract differs from a sale of lands and an agreement to sell lands. A sale of lands is the actual transfer of the title from grantor to grantee by an appropriate instrument of conveyance. An agreement to sell lands is a contract to be performed in the future, and if fulfilled results in a sale. An option, originally, is neither a sale nor an agreement to sell. It is simply a contract by which the owner of property agrees with another person that he shall have the right to buy his property at a fixed price within a time certain. The owner does not then sell his land or any interest in it. He does not then agree to sell it, but he does then sell the right or privilege to buy at the election or option of the other party. The second party gets, *in præsenti*, not lands or an interest therein, or an agreement that he shall have lands, but he does get something of value,—that is, the right to call for and receive lands if he elects. A present conveyance of land is an executed contract. An agreement to sell is an executory contract. The sale of an option is an executed contract. The lands, or an interest therein, are not sold. The contract is not executed as to them, but the option is as completely sold and transferred *in præsenti* as a piece of personal property instantly delivered upon payment of the price. (*Ide* v. *Leiser*, 10 Mont. 5; *Fulenwider* v. *Rowen*, 136 Ala. 287; *Meyers* v. *Metzger*, 48 Atl. 1113; *McCormick* v. *Stephany, supra; Smith* v. *Anderson*, 95 Atl. 358; *Elliott* v. *Delaney*, 116 S. W. 494.) A contract with a lessee for an option to purchase, based upon the consideration of the lease, is property, and as such is transferable. (*Smith* v. *Anderson, supra; Hayes* v. *O'Brien*, 149 Ill. 403.) In taking a lease a tenant may be willing to pay a

high rent for a number of years provided the landlord will give him an optional right to purchase at a fixed price, and it is not to be presumed that the landlord would agree to such a concession unless he had a consideration in the lease. Any sufficient consideration would make such unilateral contract binding in equity. (*Hawralty* v. *Warren*, 18 N. J. Eq. 124.) An option agreement, contained in a lease, to purchase the leasehold premises concerns the land and the estate conveyed by the lease and the mode of the enjoyment of the demised premises. If the lessee exercises his right of option and purchases the leased premises then the estate conveyed to him by the lease is terminated, and he enjoys the use of the premises not as a tenant but as the owner of the fee. Such an agreement would ordinarily be of benefit, rather than detrimental, to the demised premises, as a tenant having an option to purchase would be more likely to place improvements upon the premises and maintain the place in good repair than one who had not such an option agreement. If the option to purchase is not exercised by the tenant then these betterments would inure to the benefit of the landlord. The contract in this case was one which runs with the land, was assignable, was for a valuable consideration, was beneficial to the reversion, was a complete contract, and being an executed contract it did not lack mutuality, and was of such a character as would be enforced by specific performance in a court of equity unless void for other reasons.

It is contended by appellants that the option agreement contained in the lease is void because it may suspend the free alienability of the fee beyond the period permitted by the rule against perpetuities, and in support of their contention cite the case of *London and Southwestern Railroad Co.* v. *Gomm*, 20 Ch. Div. 562, and cases based thereon, such as *Winsor* v. *Mills*, 157 Mass. 362, *Barton* v. *Thaw*, 41 Pa. Co. Ct. 396, and *Starcher* v. *Duty*, 61 W. Va. 373. An examination of these cases shows that in none of them

are the facts analogous to the facts in the present case, and that many of the principles of law announced are not in harmony with the holdings of this court and the great weight of authority in this country.

In *London and Southwestern Railroad Co.* v. *Gomm, supra,* the railroad company having discontinued operations, deeded its right of way to one Powell, who thereafter deeded to Gomm. The deed to Powell contained a provision to the effect that if thereafter the railroad company decided to resume operations it should have the right to repurchase the land. It was held that the contract for resale in the deed from the railroad company to Powell was *ultra vires,* as under the Land Clauses Consolidation act of 1845, (sec. 127,) where land was sold by a railroad company as superfluous it must be sold absolutely, without reserving any interest in the company, and that the covenant gave to the company an executory interest in the land, to arise on an event which might occur after the period allowed by the rules as to remoteness.

In *Barton* v. *Thaw, supra,* the question at issue was the validity of a clause in a deed for the coal underlying certain tracts of land, as follows: "And in case parties of the second part, their heirs or assigns, should at any future time whatever desire to purchase any of said land in fee simple, then the said parties of the first part agree to sell and convey to the parties of the second part, their heirs or assigns, at a price not exceeding $100 per acre." This clause was held invalid as contrary to the rule against perpetuities, and in so holding it was said: "The rule is aimed at the suspension of alienation of property, compelling such a limitation of future interests as will compel them to vest, if at all, within a certain time. The rule promotes alienability but destroys future interests. Alienability is its object; the destruction of future interests is the means of obtaining that object. The reason for the holding is expressed in the following language: 'By its terms the option

may be accepted, as stated by counsel for the plaintiffs in their brief, at any time 'before the sun grows cold, and the stars are old, and the leaves of the judgment book unfold.' The time is limited only by the confines of eternity. We can not conceive of a more violent breach of the rule against perpetuities. Such an impress on land ought not to be sustained, and it cannot be. It isolates the property. It takes it out of commerce. It removes it from the market. It halts improvements. It prevents the land from answering to the needs of growing communities. No homes can be built or towns laid out on land so encumbered, because the land always remains subject to be taken under the option. It is not a matter which affects the rights of individuals, only. The entire community is interested. The welfare of the public is at stake. It is contrary to the well-settled public policy of the State that such an option or right to purchase land should be held to be good. It was for the express purpose of destroying such serious hindrances to material and social prosperity and progress that the rule against perpetuities was brought forth."

The holding in *Starcher* v. *Duty, supra,* is likewise based upon *London and Southwestern Railroad Co.* v. *Gomm.* In that case the option contract acknowledged a consideration of $11 paid down and provided for an option to purchase the land within one year, with a provision that the optionee might, prior to the expiration of the year, have the option extended for another year upon the payment of $10, and contained a further provision, which was the one in question: "Starcher Bros. may have this option and agreement so extended from year to year upon the payment of said sum annually, as aforesaid." It was held in that case that the option created a future interest in the property.

In *Winsor* v. *Mills, supra,* the instrument in question was a trust agreement containing an option, by the terms of which agreement each of the parties had an estate in the land to be held for an indefinite period, and no part of

the land was to be sold without the consent of both of the *cestuis que trustent.*

In *Lewis Oyster Co.* v. *West,* 93 Conn. 518, a covenant was inserted in a deed of conveyance of a fee simple title to real·estate, to the effect that the vendor might, upon giving notice within a period of time longer than that permitted by the rule against perpetuities, re-purchase the fee. Upon a suit to enforce that covenant it was held that the option to purchase was invalid because in violation of the rule against perpetuities, the decision being based upon the authorities above cited. This case also holds that an option to sell real estate creates a contingent interest in the real estate.

It is to be noted that in none of the cases cited was the option contract contained in a lease and that in each of the cases the opinion was based upon the idea that the option attempted to give to the optionee a contingent interest in real estate. In this State no title, legal or equitable, is granted, and no interest in land is created in the holder of the option by an option agreement. (*Gall* v. *Stoll,* 259 Ill. 174.) In *Johnson* v. *Preston,* 226 Ill. 447, a perpetuity is defined to be "a limitation taking the subject thereof out of commerce for a longer period of time than a life or lives in being and twenty-one years thereafter, and in the case of a posthumous child, a few months more, allowing for the period of gestation." In *Dime Savings and Trust Co.* v. *Watson,* 254 Ill. 419, it is said: "The rule is, that no interest subject to a condition precedent is good unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the interest." In Gray's Rule Against Perpetuities (sec. 329) it is said: "The rule against perpetuities concerns rights of property, only, and does not affect the making of contracts which do not create the rights of property." In *McCutcheon* v. *Pullman Trust and Savings Bank,* 251 Ill. 550, it is said: "The rule against perpetuities declares that no interest subject to a

condition precedent is good unless the condition must be ful-
filled, if at all, within twenty-one years after some life in
being at the creation of the interest."

The validity of an option clause for the renewal of a
99-year lease, or for any lease longer than the time stated
in the rule against perpetuities, has been almost universally
recognized by the courts of this country and of England,
some of the courts holding this to be an exception to the
rule against perpetuities, while other courts have based the
decision upon the ground that such option contracts do not
come within the rule against perpetuities. In *Woodall* v.
*Clifton,* 2 Ch. Div. 257, in treating of these covenants it
is said: "We must treat these covenants as exceptions
to the general rule [against perpetuities]—exceptions for
which it is very difficult to find a logical justification, but
exceptions which have been probably recognized because
they have been in existence long before the rule had been
developed." Other authorities have held that the rule did
not apply because the renewal option was an executed con-
tract between the parties by which the rights of the par-
ties were fixed at the time of its execution, and that the
option contract did not give to the optionee any interest in
the real estate whatever. By the option renewal contract
the tenant did not obtain any right or interest in lands,
either vested or contingent, nor any contract for such right,
but he did obtain a right to obtain such right or interest
at any time during the life of the lease. The lessee's right
and interest in the leased premises was exactly the same as
if the renewal option contract had not been in the lease.

Option renewal contracts are not the only contracts
which are not to be carried out within the time limited by
the law against perpetuities which are valid. By the tenth
paragraph of the agreement in question the lessee covenants
with the lessor that if the lessee make any default in the
performance of any of his undertakings or engagements
under the lease, and if he fail to make good such default

after sixty days' notice, then the lessor may, at his option, without notice to the lessee, declare the term thereby demised ended. Optional contracts, either in deeds or long term leases, giving an optional right of forfeiture and re-entry for covenant broken, have never been held invalid as being contrary to the rule against perpetuities. (*Wakefield v. VanTassell,* 202 Ill. 41.) By the optional agreement in the tenth paragraph the lessor was not given an immediate right or interest in the demised premises, but was only given a right, at his option, under certain conditions, to obtain an additional right and interest in such premises which he would not otherwise have. By it he is given the optional right, under certain conditions, to terminate the tenancy and to unite in one person the reversion and the estate for years. The optional agreement to purchase contained in the lease is of a similar character. By it the lessee was not given an immediate right or interest in the demised premises, but was only given a right, at his option, under certain conditions, to obtain an additional right and interest in such premises which he would not otherwise have. By it he was given the optional right, under certain conditions, to terminate the tenancy and to unite in one person the reversion and the estate for years. No good reason can be assigned for holding the optional right of renewal and the optional right of forfeiture and re-entry for covenant broken in a 99-year lease valid, and a clause giving the tenant an optional right of purchase during the term of the lease invalid. The optional agreement in question runs with the land and does not suspend the power of alienation. The lessor can convey the reversion. The lessee can convey the estate for years, and by the joint action of the two the two estates can at any time during the term of the lease be united in one person. *Elliott v. Delaney,* 116 S. W. 494; *Mineral Land Co. v. Bishop,* 159 N. W. 966; *Blakeman v. Miller,* 136 Cal. 138; *Mineral Land Investment Co. v. Bishop Iron Co.* 134 Minn. 412; *Bush v. Walker,* 115 Minn. 239.

In *Hollander* v. *C., M. & S. Co.* 71 Atl. 442, in a suit brought in 1907 for the specific performance of an option clause in a lease dated July 18, 1835, the Supreme Court of Maryland decreed specific performance, and held that the option clause did not place the demised premises *extra commercium*. In *Banks* v. *Haskie,* 45 Md. 207, where a bill was filed for specific performance of a covenant for renewal in a lease for 99 years, renewable forever, the court, in discussing the character of estates created by such leases, said: "This character of tenure is, so far as we know among the States, peculiar to Maryland. It has not been generally adopted, so far as we are informed, in any other State. It was introduced here in colonial times and has been a favorite system of tenure from a very early period. A large city has been built and improved and a vast majority of the real estate in Baltimore is now held under it. It is not open to any of the objections against perpetuities. Property is not thereby placed *extra commercium.* On the contrary, these leasehold interests devolve upon the personal representatives of the owner, are in terms made assignable, and they, as well as the ownerships in fee under the denomination of 'ground rents,' are subjects of daily transfer and are constantly sought for as safe investments of capital. It is a peculiar description of tenure, which has been sustained by our courts and approved and fostered by our people. While the ground rents from their nature are usually of a fixed value, the leasehold interests are more or less fluctuating. In many, and indeed in most, cases they have largely increased in value with the growth of the city, and most extensive and costly improvements have been, and are daily made, by owners of such interests on grounds thus leased."

The option contract in question does not violate the spirit of any established law of this State.

The decree of the superior court is affirmed.

*Decree affirmed.*