LUCIUS BARNETT, Appellee, *vs.* HENRY MEISTERLING, Appellant.

*Opinion filed October 22, 1927—Rehearing denied Dec. 15, 1927.*

1. SPECIFIC PERFORMANCE—*what constitutes an option.* An option is neither a sale of property nor an agreement to sell, but is merely a contract by which the owner agrees with another person that the latter shall have the right to purchase the former's property at a fixed price within a certain period.

2. SAME—*an option is an executed contract.* An option is an executed contract and consists of a sale of the right or privilege to purchase property at the election of the purchaser within the time and in the manner stipulated, and the sum paid to keep the offer open is not a partial payment on the purchase of the property but is the consideration for the privilege or option.

3. SAME—*the word "deposit" does not suggest an option.* The use of the word "deposit," in referring to a payment on a contract of purchase, is not synonymous with "option" and does not suggest an option but denotes that a pre-payment is made by way of pledge or security.

4. SAME—*what instrument is a sufficient executory contract for sale of land.* An instrument, although in the form of a receipt for part payment, is a sufficient executory contract for the sale of land where it contains the names of the parties, the purchase price, the terms of payment, a description of the property, the duty to furnish evidence of title, the apportionment of taxes and special assessments and the time for performance, and is signed by both parties and contains mutual obligations.

5. SAME—*description in contract need not be as definite as in a deed.* The complete description required in a deed is not essential in a contract for a conveyance if the property sold is pointed out definitely.

6. SAME—*when description in contract is sufficient.* The description of the property in a contract for a conveyance is sufficient where it describes the property as the vendor's "North Ave. lot" in a certain subdivision, where the evidence shows that the vendor owned only one lot abutting on North avenue in the subdivision mentioned and where a check given as part payment when the contract was executed contains a notation giving a definite description of the particular lot.

7. SAME—*when vendor cannot rely upon the Statute of Frauds.*
The Statute of Frauds was not intended to permit a person to
found a claim upon his own iniquity or to take advantage of his
own wrong, and where a contract as written requires the vendor
to pay general taxes for a certain year but the vendor persuades
the purchaser to orally assume the payment of said taxes, the
vendor cannot afterwards set up the Statute of Frauds to defeat
the contract because it rests partly in writing and partly in parol.

8. SAME—*when purchaser's failure to perform in time specified
is excused.* Failure on the part of a purchaser to perform within
the time required by a contract for a conveyance will not forfeit
his rights where he has sought to perform within the time speci-
fied and has failed through the vendor's fault or where the delay
was at the vendor's request.

9. SAME—*when formal tender is not required.* Where a pur-
chaser is ready to perform the contract in every respect but the
vendor refuses to proceed upon grounds other than the failure of
the purchaser to make formal tender of the purchase price the
purchaser is not required to make formal tender of the money.

10. SAME—*when defendant cannot complain that decree is in-
consistent.* A defendant to a proceeding to specifically enforce a
written contract cannot complain, on appeal, that certain provi-
sions of the decree are inconsistent, where the inconsistency, if
any, is in his favor.

11. SAME—*when receipt and check constitute contract.* Where
an instrument in the form of a receipt for the initial payment on
land and the check by which the payment is made are parts of the
same transaction, the instrument and the check together consti-
tute the contract.

APPEAL from the Superior Court of Cook county; the
Hon. OSCAR HEBEL, Judge, presiding.

JOHN H. BUCK, for appellant.

J. W. HALLAM, for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the
court:

Lucius Barnett filed his bill of complaint in the superior
court of Cook county against Henry Meisterling for the
specific performance of an instrument alleged to be a con-

tract for the sale by Meisterling to Barnett of a certain parcel of real estate. The defendant answered the bill, denying its material allegations and invoking the Statute of Frauds. Upon a hearing a decree of specific performance was rendered. From that decree Meisterling prosecutes this appeal.

The instrument in question is as follows:

"CHICAGO, ILL., *April 2, 1925.*

"Received of Lucius Barnett the sum of $50 as part payment on my North Ave. lot in the Madsen North of Oak Park Subdivision. It is agreed that the purchase price is to be $2000, and that this $50 is to apply on the purchase price. It is further agreed that the seller is to furnish a guaranteed policy brought down to date, and is to pay the taxes for 1924. It is agreed that the purchaser is to pay all special assessments. This deposit holds good only to May 1, 1925.

H. MEISTERLING,
LUCIUS BARNETT."

Appellee wrote the instrument, and he first inserted the number of the lot as 32 or 37, but appellant objected that he was not certain of the number, and in compliance with the latter's request appellee drew a line through the word "lot" and the figures following it and inserted instead the words "my North Ave. lot." Appellee then paid appellant, by check, the sum of $50 mentioned in the instrument. Appellant endorsed and cashed the check. In the lower left-hand corner on the face of the check a notation appears which discloses an erasure of a word or figure after the word "lot" and the substitution therefor of the word "in," as well as the insertion of the number "32" just above the cross of the "t" in the word "lot." As so changed the notation reads: "Received as part payment on lot 32 in Madsen North of Oak Park Subdivision, a Sub. in the (S. W.¼) of sec. 31, Township 40 North, Range 13, East 3rd P. M., Cook County, Ill."

The substance of appellee's testimony is as follows: On April 27, 1925, after the execution of the instrument, he went to appellant's place of business, taking with him two

one-thousand dollar bills and $50 in addition, but found appellant absent. He called again on May 1 with the money to consummate the purchase but failed to find appellant. On the latter day appellee was accompanied by his brother Robert and Joseph Brooks. On May 4 appellee called appellant's residence by telephone and learned that appellant was not at home. On the following day he talked with appellant over the telephone and informed him that he had attempted to communicate with him for several days and that he was ready to close the transaction. Pursuant to arrangement they met on the following day at the Oak Park Trust and Savings Bank. Appellee there informed appellant that he was ready to complete the purchase of the lot, and produced $2000 in currency. Appellant said that he, too, was ready, and exhibited to appellee a deed, which the latter, upon inspection, found to be the deed by which appellant acquired title to the lot. Appellee told appellant that it would be necessary to draw a deed of conveyance from appellant to appellee and to produce some evidence that the title was clear. Appellant declared that he wished to close the matter at that time, to which appellee replied that he could not accept the deed exhibited to him as a conveyance of the title. Because appellant did not wish persons in the bank with whom he was acquainted to hear what was said, he suggested to appellee that they go outside. When they reached the sidewalk appellant said, "Look here; that contract you got isn't worth anything; · it isn't any good," further stating that he had shown the instrument to a friend who was a real estate broker and that the latter told him that he could sell the lot for $3750. Appellant proposed that they ignore the written contract and sell the lot to the prospective purchaser, and that he, appellant, would divide the excess of $1750 equally with appellee. This offer was declined, and appellant then stated that he would not consummate the sale because the deposit held good only until the first day of May. Appellee insisted that he had

gone to appellant's place of business and had endeavored to reach him by telephone prior to that date without avail. Further discussion resulted in an offer by appellant to make the conveyance if appellee would pay the taxes for the year 1924. Appellee accepted this condition and requested appellant to obtain an opinion showing a good title, to have the deed drawn and to inform him when he was ready. Not having heard from appellant, appellee called him on May 17 and inquired about the guaranty policy. Appellant said he had not received it but expected it at any time. On or about May 21 appellant notified appellee that he had the guaranty policy and was ready to proceed. They arranged to meet at appellant's place of business on the following Monday. Appellant did not appear, and on June 11 he informed appellee that he would not make the sale. On a prior occasion appellant had offered, in the event appellee decided that he did not want the lot, to refund the earnest money paid.

Robert Barnett and Joe Brooks both testified that they went with appellee to appellant's place of business on May 1; that the store was locked and no person was present, and that appellee had $2000 in money in his possession at the time. Appellee's testimony concerning his visit to appellant's store on April 27 with the money to pay the purchase price of the lot was also corroborated by his brother.

Appellant testified that when appellee wrote the agreement on April 2 he inserted the lot number as "37;" that upon appellant's objection that he was not certain of the number and would not sign the instrument with that number incorporated in it appellee consented that it be stricken, and it was done; that when he, appellant, read the check there was no complete description of the property in the lower left-hand corner; that the first message he received from appellee after April 2 was on May 4 or 5, when appellee called his home and his wife answered the telephone; that on May 5 or May 6 appellant had a conver-

sation with appellee at the Oak Park Trust and Savings
Bank, in which appellant informed him that his option to
purchase the lot had expired on May 1; that appellee gave
as the reason for the delay that he had been ill; that appel-
lant told him he had given a real estate broker an oral ten-
day option to sell the lot, but that he would take the lot out
of the broker's hands and pay him $50, if necessary for
that purpose, if appellee would pay the taxes for the year
1924, amounting to $36, in which event appellant would
have the examination of the title extended; that appellee
agreed to pay these taxes upon the delivery of the guar-
anty policy, but that he did not at the time produce, or
offer to produce, any part of the purchase price. On cross-
examination appellant admitted that at the time of their
meeting on May 5 or 6 the guaranty policy was in his
vault at the bank and that no recent examination of the
title had been made nor did he then have a deed pre-
pared; that he later sent the guaranty policy to the Chicago
Title and Trust Company for the purpose of extending it
to date; that the policy was returned to him on May 19
and that he notified appellee on the same day that he was
ready to consummate the sale; that the following Monday,
at 11:00 A. M., was fixed as the time to close the transac-
tion; that appellant was present at the appointed time and
place and waited for appellee until some time in the after-
noon, but he failed to appear; that later appellant procured
the papers he had previously signed and canceled the names
on them and informed appellee of the fact by telephone,
and that still later he received two letters, one from ap-
pellee and the other from his attorney, neither of which
appellant answered.

On rebuttal, O. G. Haller, commercial manager of the
telephone company, produced a record which showed that
a telephone call had been made from appellee's number to
appellant's number on each of the following days: May 4,
5 and 17 and June 4. The record did not, however, show

who made or answered these calls. Appellant admitted that he had received two telephone calls from appellee.

The check for $50 which appellee gave appellant when the instrument in question was executed was drawn on the Ætna State Bank. A. G. Smith, a teller in that bank, testified that he examined the check when it was presented for payment; that it then had something written upon it in the lower left-hand corner; that his attention was directed to the check because of an erasure upon it, and that the check, at the time of the hearing, was in the same condition as it was when it passed through the bank. The bank's records also disclosed that appellee had drawn three checks on May 1, 1925, of which one was for $2400.

The first contention made by appellant for a reversal of the decree is that the instrument executed April 2, 1925, was an option, good only if exercised on or prior to May 1, 1925, and that, appellee having failed to act within the time prescribed, he lost all rights under the instrument. On the contrary, appellee insists that it is a present, binding, executory contract for the sale of real estate. An option, originally, is neither a sale nor an agreement to sell, but is merely a contract by which the owner of property agrees with another person that he shall have the right to purchase the former's property at a fixed price within a certain period. By an option the owner neither sells his land nor an interest in it, but he does sell the right or privilege to purchase it at the election or option of the other party if exercised within the time and in the manner stipulated. Both a present conveyance of land and the sale of an option are executed contracts. An agreement to sell land is an executory contract. (*Keogh* v. *Peck,* 316 Ill. 318; 1 Page on Contracts,—2d ed.—sec. 571.) If the sale does not take place in accordance with or pursuant to the agreement to sell there is no executed contract. Neither the word "option" nor any equivalent of that word appears in the instrument under consideration. The instrument re-

cites that the sum of $50 is received "as part payment" on the lot and that it "is to apply on the purchase price." The words "as part payment" are consistently used if the instrument be construed as an executory contract to sell land, but they are not apt terms to indicate an option, for a sum paid to keep an offer open is not a partial payment on the purchase of real estate but is the consideration for the privilege or option. The word "deposit" is not synonymous with "option" and does not suggest an option, but denotes that a pre-payment is made by way of pledge or security. It is a common practice, when a contract for the sale of real estate is made, to require a deposit by the purchaser as earnest money, and this deposit is applied on the purchase price upon the consummation of the sale. Such application of the money deposited is usually made dependent upon the furnishing of a merchantable title, or, if there be defects in the title, upon their removal within a specified period. Although certain words in the instrument are in the future tense, their use is not inconsistent with a present binding contract. The instrument contains the essential elements of an executory contract for the sale of real estate, for the names of the parties, the price to be paid, the terms of payment, a description of the property, the duty to furnish a guaranty policy, the apportionment of taxes and special assessments and the time for performance are all stated. The contract was signed by both parties and it contained mutual obligations. If appellant had performed the contract on his part he could have required appellee to pay him $1950 on May 1, 1925, or forfeit the $50 already deposited. Appellant's first contention cannot be sustained.

It is also insisted by appellant that the instrument lacked a sufficient description of the property. The evidence shows that appellant owned only one lot abutting on North avenue in the subdivision described in the instrument. The initial payment of $50 acknowledged in the instrument was made by check given when the instrument was executed.

The check and the instrument constitute parts of the same transaction. The notation upon the check not only gives the number of the lot and the name of the subdivision, but also the quarter section, township, range, county and State in which the subdivision is situated. The complete description required in a deed is not essential in a contract if the property sold is pointed out definitely. The description in the instrument, and the check, which together constitute the contract, gives rise to no uncertainty concerning the identity of the property and is sufficient.

Appellant contends that, the Statute of Frauds having been pleaded, the contract cannot rest partly in writing and partly in parol. By the written contract the obligation to pay the general taxes for the year 1924 was imposed upon the appellant. At his request that obligation was assumed by the appellee. No other change was made in the provisions of the contract, and the change was obviously advantageous to the appellant. To hold that a person may in his own interest secure a departure from the terms of a written contract and then be permitted to avoid the contract because the change has not been reduced to writing would shock the conscience of fair-minded men. The Statute of Frauds was not designed or intended to afford an opportunity for escape from the fundamental principle that no person shall be permitted to found a claim upon his own iniquity or to take advantage of his own wrong. *National Importing and Trading Co.* v. *Bear & Co.* 324 Ill. 346.

It is further contended by appellant that appellee failed to prove performance of the contract on his part, and, consequently, that he is barred from obtaining the relief which he seeks. Appellee testified that he called at appellant's home and place of business on April 27, and again on May 1, 1925, with the money to pay the purchase price of the lot. On neither occasion was appellant present. Appellee's testimony with reference to these calls is corroborated, the first by one witness and the second by two

witnesses. The bank's records disclosed that on May 1 appellee withdrew sufficient money to perform the contract on his part. Appellant offered no evidence concerning his whereabouts on either of the days when appellee called. He testified that appellee had promised to inform him within a week after the contract was signed whether he should bring the guaranty policy down to date; that appellee failed to communicate with him before the fifth day of May, and that in the meantime he had given an option to sell the lot to a real estate broker, for a release from which he might be compelled to pay something. The option was an oral one, and it does not appear that appellant found it necessary to obtain a release from it or that he incurred any expense in that regard. The chancellor found that appellee had been ready, willing and able to perform the contract on his part and that the delay in its performance was caused by appellant. The finding is supported by the evidence. Failure on the part of a purchaser to perform within the time required by a contract for a conveyance will not forfeit his rights thereunder where he has sought to perform within the time specified and has failed through the vendor's fault or where the delay was at the vendor's request. *Kopeyka* v. *Woodstrom,* 305 Ill. 69; *Emerson* v. *Fleming,* 246 id. 353.

Appellant insists that appellee did not make a tender of $1986—the sum mentioned in the decree. Appellee was ready to perform the contract in every respect, and since appellant refused to proceed upon grounds other than the failure to make a formal tender of the purchase price, it would have been an idle ceremony for appellee to have tendered the money. *Mishelsky* v. *Carman,* 320 Ill. 123; *Raginsky* v. *Lawler,* 313 id. 441; *Cohen* v. *Segal,* 253 id. 34.

The decree directs appellee to deposit $1986 with the clerk of the court within fifteen days, and provides that unless he so deposits $1950 his interest in the property shall cease. Appellant argues that these provisions are incon-

sistent and conflicting. The contract required appellee to pay $1950—the balance of the purchase price. By acceding to appellant's request to pay the taxes for the year 1924 appellee volunteered to pay an additional $36. Appellant was bound by the contract, which required the payment of $1950 to him, and he is hardly in position to object to the decree because by its provisions he may receive $1986 instead of $1950.

The decree of the superior court of Cook county is affirmed.

*Decree affirmed.*