GLASS and another vs. GOLDSMITH.

BILL OF LADING: *when open to explanation. Delivery of grain from elevator to vessel, when complete.*

1. As between the shipper of goods and the owner of the vessel, a bill of lading is open to explanation as to the quantity of the goods, their condition, etc.

2. The fact that the shipper has surrendered to the warehouseman, after the execution of the bill of lading, his warehouse receipt for the full amount named in such bill, will not preclude the ship-owner from disputing the correctness of the bill in that respect.

3. The facts that the warehouseman weighed grain into cars in the warehouse (which cars were then to be taken by the warehouseman's horses and men to the edge of the dock, thence to be discharged into the vessel), and that " each car was tallied by the mate or other authorized officer of the vessel, in the warehouse," did not constitute a delivery there of the grain to the ship-master.

APPEAL from the County Court of *Milwaukee* County.

Action by the owners of a vessel against the owner of a cargo of wheat shipped on said vessel from Port Washington in this state to Buffalo, New York, to recover $391 and interest, retained by the consignee from the freight earned, as the value of 197 bushels of wheat, the difference between the number expressed in the bill of lading and that delivered to such consignee. The answer set up a defense and counter-claim, based on the following alleged facts: Defendant had in an elevator at Port Washington, 13,229 bushels of wheat, for which he had the receipts of the warehouseman. It was the usage in said port for vessels intended to be loaded with wheat from the elevator to lie by a pier connected therewith, and that an officer of the vessel, together with the warehouseman, should weigh out and tally the wheat, and that the officer, on such tally, should *at the elevator* receive the wheat for the vessel and

stow it aboard, and that thereupon the master should deliver a bill of lading 'to the warehouseman for whom it might concern, and that the holder of receipts for the wheat, should, upon a surrender of them, be entitled to the bill of lading. The officers of plaintiffs' vessel, with the warehouseman, did, *in said elevator*, weigh out and tally to the vessel 13,229 bushels of defendant's wheat, which said vessel *then and there* received, and the master delivered to the warehouseman a bill of lading for that amount, of the tenor above stated, which the warehouseman delivered to defendant as and for said vessel's bill of lading; in consideration whereof, and relying on the representations in said bill contained, defendant surrendered the warehouse receipts for the number of bushels above named. Plaintiffs failed to deliver the full amount, and thereby defendant sustained a loss of 197 bushels, of the value of $391. Substantially the same facts, except as to the delivery and receipt of the grain, were set up in a separate defense. At the trial, the plaintiffs admitted that they delivered at Buffalo 197 bushels less than the number named in the bill of lading, but introduced evidence of the circumstances under which the bill of lading was signed, and tending to show that the number was left in blank at the time of such signature, to be afterwards filled up by the warehouseman; that the wheat was loaded into cars in the elevator, the cars having been previously weighed; that after the cars were loaded they were again weighed, the tally being kept by the warehouseman or an agent for him, and by the mate as a representative of the vessel, and the weight of each car was agreed on before it left the warehouse; that a horse was then hitched to the car and hauled it down to the edge of the dock near the vessel, and there a spout from the vessel was attached to one projecting from the car, and through these the wheat was discharged into the vessel; that there

was some loss of wheat between the car and the vessel, but that all the wheat delivered upon the vessel was carried without loss to Buffalo, and there delivered to the consignee.    The defendant's evidence tended to show that there was a considerable waste at the end of the spout on board of the vessel and near the hatch, of which end the sailors had charge, as it was their business to have; that this waste was caused by the roughness of the sea during the latter part of the time that the vessel was loading, producing a violent motion of the vessel and throwing the wheat upon the deck, which was washed by the water; that the state of the sea during that time was such that the process of loading should have been suspended; and that it was for the captain of the vessel to determine whether such suspension should be made.    It also tended to show that the full amount named in the bill of lading was delivered over the rail of the vessel, and that defendant had nothing to do with the loading, and had no knowledge that the amount was short when he delivered the warehouse receipts and received the bill of lading.    It further appeared that the cars and the horses by which they were drawn belonged to the warehouse, whose men were on the dock in charge of them, but some of the vessel's crew were also on the dock, and " helping generally."    The warehouseman testified: " The sailors were standing about the spouts; that was their business.    We take care of the cars and the grain before; but they have to look after the spouts.    *    *    There was a little waste at the car end of the spouts—five to seven bushels.    I told the captain I would make allowance for it."

The court instructed the jury that if the whole amount of wheat actually delivered on board the vessel at Port Washington was delivered to the consignee at Buffalo, then plaintiffs were entitled to recover the amount claimed by them; and that if, in loading the vessel, wheat was lost

after it passed over the rail thereof, the loss would fall on the vessel; and that it was for plaintiffs to prove the alleged error in the bill of lading.

The following instructions asked by the defendant were refused by the court: 1. "If the warehouseman weighed into cars defendant's wheat for plaintiffs to load on their vessel and transport to Buffalo, and each car was tallied by the mate, or other authorized officer of the vessel, such acts constituted a delivery to and acceptance by plaintiffs as common carriers, of each car of wheat as soon as so tallied; and from the time of such delivery and acceptance, plaintiffs were bound to safely keep and load such wheat on board the vessel. 2. If such cars, so weighed and tallied, contained the quantity of wheat mentioned in the bill of lading, plaintiffs are liable to defendant for the value of the difference between such quantity and that delivered at Buffalo, at the market price at Buffalo." Another instruction so asked and refused was, in substance, that if after such weighing and tallying, the master of the vessel signed bills of lading in blank, and agreed that the warehouseman should fill out the same, which he did, and if defendant, in consideration of the delivery to him of the bill of lading, surrendered the warehouse receipts to an amount equal to that specified therein, without any reason to believe that such amount was erroneous, plaintiffs were estopped from denying that such amount was weighed and tallied.

Verdict for the plaintiffs for the full amount claimed by them; new trial denied; and defendant appealed from a judgment on the verdict.

*Emmons & VanDyke*, for appellant, argued that there was an implied promise that the master and crew would take due care of the wheat as to loading it on board, by which both the vessel and owners were bound. 1 Parsons' Mar. Law, 122. It is the master's duty to give a bill of lading,

which has an important influence over the rights and obligations of the parties, and whose statements should be *accurate*. Id., 134–5. If such a bill has altered the situation of parties relying on its truth, so that either an innocent party must suffer, or else the ship owner, whose agent signed the bill either fraudulently or *heedlessly*, the owner must bear the loss. Id., 137. This defense does not grow out of the bill of lading, but of the implied agreement on the part of the owners that the master will make all the papers usually issued by him with accuracy. In signing bills of lading in blank, the master was guilty of gross negligence. In consequence of this negligence, the defendant delivered up his warehouse receipts, thus divesting himself all means of controlling the property, and passing the title. *Rice v. Cutler*, 17 Wis., 351; *Whitney v. Tibbits*, id., 359. The warehousemen could pass a good title to a third party; and defendant would be remitted to an action against the warehousemen, with the burden upon him of overcoming the *prima facie* evidence of delivery to him furnished by the possession of the receipts, and sustained by the tally, against which he could only offer proof by the crew of the vessel that they delivered all they received, and that the measurement in Buffalo was accurate. 2. We submit that defendant, having taken the bill of lading from the warehousemen in extinguishment of his receipts, stands on the same footing as a holder for a valuable consideration; as to whose rights see Abbott on Ship., *325; 1 Parsons' Mar. Law, 137, and cases cited in note; *Strong v. Railway Co.*, Am. Law Reg., Sept., 1867, p. 680; Laws of 1860, ch. 340; Laws of 1863, ch. 23; *Norris v. Milwaukee Dock Co.*, 21 Wis., 130. 3. The delivery of the wheat was complete when the tally was made by the mate. This weighing was for a two-fold purpose: as between the warehousemen and the defendant, it was to determine the amount shipped out

of the warehouse; as between the warehousemen and the vessel, it was to set it apart and deliver it to the mate. When once tallied by the mate, the whole duty of the warehousemen was ended; they had no more control over it. *Newhall v. The Barque R. C. Winslow*, 3 Law Monthly, 78. The vessel or owners are bound by the reception of the goods for transportation, by any person authorized by the master or owner to receive them, either on board, on a lighter, or at an adjacent wharf or other usual place of delivery. 1 Parsons' Mar. Law, 132; *Balkley v. The Naumkeag Steam Cotton Co.*, 24 How. (U. S.), 386. The fact that the transportation of the wheat from the elevator to the vessel, and its discharge from the cars, were managed jointly by the warehousemen and the crew, does not change the time of the commencement of the vessel's liability. *Newhall v. Barque R. C. Winslow, supra; DeMott v. Laraway*, 14 Wend., 225.

*Jno. W. & A. L. Cary*, for respondents, to the point that the bill of lading is not conclusive as between the shipper and vessel owner, cited *Ellis v. Willard*, 9 N. Y., 529; *Strong v. Railway Co.*, Am. Law Reg., Sept., 1867, p. 680. 2. No act can constitute a delivery which does not place the property within the actual custody and control of the party to whom the delivery is to be made. Plaintiffs kept a man at the scales to tally the weights and ascertain the quantity of wheat, for their own protection and convenience, but exercised no control over the wheat until it was discharged from the cars over the rail of the vessel.

DIXON, C. J. It is well settled as between the original parties, the shipper of the goods and the owner of the vessel, that a bill of lading, like other receipts, is open to explanation, so far as it is a receipt, that is, as to the quantity of the goods, their condition, and the like. *Ellis v.*

*Willard*, 9 N. Y., 529; and *Strong v. Railway Co.*, Sup. Ct., Mich., Am. Law Reg., Sept., 1867, and cases cited. The jury in this case, upon evidence which is not claimed to have been insufficient, have found that there was a mistake in the bill of lading as to the quantity of wheat shipped; but, as the defendant, the shipper of the wheat, held the warehouse receipts of Blake & Son for the wheat before it was shipped, which receipt, for the full amount of wheat specified in the bill of lading, he surrendered to Blake & Son on delivery to him of the bill of lading, and without, as he testifies, knowing anything about the mistake, it is contended that the plaintiffs ought to have been precluded from showing the mistake; and that an instruction of the court to the jury, that they were to inquire as to the whole amount actually delivered on board the vessel, was erroneous. This is the principal question to be considered in the case. It is argued that the warehouse receipts were valuable evidence of the defendant's right to the wheat; that the surrender of these to the warehousemen destroyed this evidence, and so far divested the title of the defendant that the warehousemen could pass a good title to a third party, and that thus the defendant would be remitted to his action against the warehousemen for the value of the property, in which action the burden of proof would be upon him to overcome the *prima facie* evidence afforded by the production of the receipts in their hands. This is about all there is of the objection; the burden of proof has been changed. Is this such a change in the situation of the defendant, caused by the mistake in the bill of lading, as ought to make the bill of lading conclusive between these parties? We are cited to no authority to this effect, and we know of none. It seems clear to us that it is not, and consequently that there was no error in the instructions given upon this part of the case.

The four special instructions asked by the defendant were properly refused, because the placing of the wheat in the cars in the warehouse, or on the dock, was not a delivery to the carrier or on board the vessel, so as to make the carrier liable.

*By the Court.*—Judgment affirmed.