# The Illinois Central Railroad Company

*v.*

## John G. Hornberger.

COMMON CARRIER—*liability of, for not receiving and transporting grain.* Where a person, desirous of shipping a large quantity of corn over a railroad to Cairo, stored the same in the warehouse, and on promises of the railroad company, to be transported as soon as cars could be procured for the purpose, but the company never received or receipted for the same, and was unable to forward the same, for want of cars, and for the reason that the road was controlled by the military authorities of the United States, who refused to give permits to ship the same, and in consequence of which the grain was injured by exposure, etc: *Held,* that, under the circumstances, the company was not liable to the owner

of the grain for the delay in furnishing transportation, there being no contract to transport the same, and the same never having come to its possession for transportation.

Appeal from the Circuit Court of DeWitt county; the Hon. Lyman Lacey, Judge, presiding.

This was an action on the case, by the appellee, against the appellant as a common carrier, for not furnishing transportation for a lot of corn. The opinion of the court states the material facts of the case.

Messrs. Williams, Burr & Capen, for the appellant.

Messrs. Buckingham, Spencer & Weldon, for the appellee.

Mr. Chief Justice Walker delivered the opinion of the Court:

In the month of January, 1865, appellee, who was a grain merchant on the line of appellant's road, contracted with Cobb, Blaisdell & Co. to sell them 20,000 bushels of corn, to be delivered at Cairo on or before the first day of the next March. Afterwards, the contract was changed to 50,000 bushels, and subsequently the time for its delivery was, by agreement of the parties. extended until the first day of April. This contract, with its modifications, was known to appellant's agent at Macon station. The purchasers of this grain from appellee were large contractors of grain to the general government, to be delivered by them at Cairo, and this fact was also known to the company.

Appellant had a depot and warehouse at Macon station, in which to store goods, produce and other property shipped to and from that point on their road. Appellee placed the grain sold to Cobb, Blaisdell & Co. in this warehouse, on the platform thereof and on the ground adjacent to the warehouse, with the knowledge and consent of the station agent. to await transportation to Cairo so soon as cars could be had for the

purpose. But a few car loads of this corn were carried by the company to its destination. and the remainder became heated. damaged, and a large portion entirely spoiled. Considerable quantities of corn. for other persons, were carried by the company to Cairo, during the time this corn was lying at the depot, and before the first of April, the time when appellee was to have completed its delivery to Cobb, Blaisdell & Co., at Cairo. This suit was brought to recover damages for the injury to the grain.

A trial was had in the court below. before the court and a jury, resulting in a verdict in favor of appellee for $23.791.36, which was set aside and a new trial granted. Afterwards. a second trial was had before the court and a jury, when a verdict was found for $14,879.91 for plaintiff. A motion for a new trial was entered, but overruled by the court, and judgment was rendered on the verdict, from which defendant appeals to this court, and assigns various errors.

The first question we propose to discuss is, whether. from all the evidence in the case, it can be inferred that this grain was received by the railroad company into their custody for immediate transportation. On a careful consideration, we are of opinion that neither party so understood the arrangement, but, on the contrary, appellee only placed it there to await cars for transportation. Neither party, at that time, knew when cars could be had for the purpose, but the station agent expressed the opinion that there would be no great delay in procuring transportation. The agent did not count the sacks, or give any receipt for the corn, but simply, on being asked, gave permission to place a portion of the grain in the warehouse of the company. When that was filled, he then gave permission to place a portion on the platform, outside, and at the end of. the warehouse. When that space was filled, he then gave appellee permission to take some fencing lumber that belonged to the company. and construct a temporary platform upon which to pile the corn, on the ground near the railroad track, and to cover it from the weather;

and, in pursuance of such permission, appellee made the erection, placed the corn on it, and placed some planks over it to shed the water and protect it from the weather.

Appellee, at first, testified that the corn was always in his possession and control, and that he looked after and took care of it; but he again came upon the stand, as he admits, on the suggestion of his attorney, and stated that the grain was not in his possession or control.

The freight agent testified that the grain was placed there, by his permission, to be convenient and readily loaded into the cars, so as to occasion no delay when they arrived; that he gave the grain no care, and never gave receipts until the grain was placed in the cars for immediate shipment; that he made a distribution of empty cars among shippers, unless he had orders which prevented such distribution; that he was prevented from apportioning cars to appellee, in consequence of having orders to furnish them to other persons; that he promised cars, as soon as they could be had, and in the order of priority, to shippers; that when applications were made for cars, he reported the fact to his superior officer, from whom he received orders for the disposition of empty cars sent to the station.

We perceive no evidence in the record which tends to show that either of the parties supposed that this grain had been received for immediate shipment, or that it had even passed into the possession of the company. Appellee, on the contrary, must have supposed it was under his control and in his possession. This seems to be clear, from what he did. This case is like *The Ill. Cent. R. R. Co.* v. *Ashmead,* 58 Ill. 487, in all of its essential particulars ; and it was there held that the company had not received the grain, but had simply given Ashmead permission to store it in their cars and warehouse until it could be shipped. The evidence in that case was introduced in this case, as well as that in *The Ill. Cent. R. R. Co.* v. *McClellan,* 54 Ill. 72. We are, on the entire evidence in the case, of opinion that it fails to sustain the verdict.

The evidence shows that there was, during the first months of the year 1865. an unusually large amount of grain on the line of appellant's road, for shipment to Cairo; nor do we see any evidence that the company had not supplied themselves with rolling stock sufficient for the ordinary transportation of grain and other articles of commerce, along the line of their road; and the evidence strongly tends to show that, with all their facilities for transportation, it would have been exceedingly difficult to have transported all the grain and forage that was awaiting shipment.

The evidence shows that the road was under military control, and shipments of grain, in most cases, were controlled by the army officers. It may be true, that they may not, in terms, have prohibited the shipment of this grain, but if they controlled the shipment of grain and forage, by requiring all of the stock of the road to be used in transporting for other parties. the effect was the same as if there had been a positive prohibition.    The same evidence was before the court that was heard in Ashmead's case, except there was the testimony of a large number of business men of Cairo, who state that they sent and received ordinary freight without getting a permit from army officers, and that they had no knowledge that the road was under military control, or that a permit was required.    This may all be true, and still not have the slightest tendency to disprove the fact.    For aught that appears, a permit may have been granted in every instance, and yet they have been unaware of the fact.    The evidence of appellant's witnesses tends to prove that such a permission was given, that the people of Cairo might be supplied with provisions and other necessaries.    This evidence by no means overcomes the testimony of appellant's witnesses; this evidence by no means affects that proof.

Nor was it necessary to give notice to appellee that the road was under military control, as his property was not received by the company for immediate shipment; and even if it had been, he seems to have been aware that grain and military

stores had the preference in transportation, as he was careful to inform the agent at the depot that it was for Cobb, Blaisdell & Co., large government contractors.

Nor can appellee recover, on the evidence, for the delay in furnishing transportation, inasmuch as a large portion of it was controlled by the army officers. The company were not free to act in all cases, and, being controlled by orders from these officers in a large portion of the transportation, the employees of the road could not transact their business as they would have done had they been free in its management. It may be that only a portion of the grain was carried on the direct orders of the army officers, and the balance on permits, still the company could not apportion transportation as they could have done had there been no such interference.

All the evidence considered, we think the finding was against the instructions and the evidence, and the court below erred in refusing to grant a new trial. The judgment must be reversed.

*Judgment reversed.*

Mr. JUSTICE SCOTT: I can not concur in either the reasoning or conclusion of this opinion.