STANDARD COMBED THREAD COMPANY, RESPONDENT, v. PENNSYLVANIA RAILROAD COMPANY, APPELLANT.

Submitted July 6, 1915—Decided November 15, 1915.

1. The loading of goods on a detached box car at a public siding distant from the railroad station and freight office, and with no participation by the railroad employes beyond placing the car, the understanding and custom being that shipper was allowed forty-eight hours to load and that the agent at the nearest freight station should be notified when the loading was complete, did not constitute a delivery to the carrier when the loading was complete in less than forty-eight hours and no notice of such completion was given to the company.

2. Under the Interstate Commerce act as amended, and the regulations of the interstate commerce commission respecting tariffs and uniform bills of lading, when the delivery to the carrier is complete, though no bill of lading was issued, the rights and liabilities of the parties are regulated by the uniform bill of lading so far as applicable.

3. A clause in said uniform bill of lading referring to "private or other sidings"—*Held* to include a public siding.

258    COURT OF ERRORS AND APPEALS.

Stand. Comb. Thread Co. v. Pa. R. R. Co.    88 *N. J. L.*

On appeal from the Supreme Court.

For the appellant, *Gaskill & Gaskill.*

For the respondent, *G. Dore Cogswell.*

The opinion of the court was delivered by

PARKER, J.   The question for decision is whether defendant as a common carrier engaged in interstate commerce, is liable for the destruction by fire of certain goods of plaintiff intended to be consigned to parties in Ohio from Beverly, in this state, where plaintiff's factory is located.   Defendant maintained what is called a "public siding" near plaintiff's factory, and was accustomed to place cars thereon for the convenience of plaintiff and other shippers in loading.   The station of defendant company was one-half mile away, and the custom was for plaintiff to telephone for a car when needed, to defendant's freight agent at the station, and a car would be placed, and the shipper allowed forty-eight hours to load it; when defendant was notified the car was loaded, it would be moved by defendant to the freight station or its immediate vicinity; the doors would be sealed, and a bill of lading would be issued.   Until such sealing the doors remained unfastened.

On the occasion in question the plaintiff ordered a car on June 12th.   When it was placed does not appear, but the stipulation of facts shows that it was loaded on the 13th and the loading finished at six P. M., at which time the freight office was closed; and no notice that the car was ready was given to defendant.   The car remained in place with doors unfastened that night, and took fire, or was set on fire during the night and the contents destroyed.   Defendant claimed that there had been no delivery to it, and if there had been, that it was protected by a clause in its "uniform bill of lading" prescribed by the so-called Carmack amendment, which clause reads as follows:

"Property destined to or taken from a station, wharf, or landing at which there is no regularly appointed agent shall be entirely at risk of owner after unloaded from cars or ves-

JUNE TERM, 1915. 259

88 *N. J. L.*     Stand. Comb. Thread Co. v. Pa. R. R. Co.

sels or until loaded into cars or vessels, and when received from or delivered on private or other sidings, wharves, or landings shall be at owner's risk until the cars are attached to and after they are detached from trains."

The trial court held that there had been a delivery; and conceding that under the federal legislation relating to interstate commerce the rights of the parties after delivery were regulated by the terms of the uniform bill of lading though none had in fact issued, held as a matter of construction of the clause in question that the words "private or other siding" excluded a "public siding" such as that in question, and held defendant liable.

Our examination of the case leads us to the conclusion that there was error in both rulings.

First, we think there was no complete delivery. The place was not a station. No agent of the defendant was in attendance or exercising any supervision. No notice that the car was ready had been given to the defendant, and until the receipt of such notice or the expiration of the forty-eight hours allowed for loading, defendant's agents were entitled to assume that the loading was not complete. The general common law rule is that there must be a delivery and acceptance, and while acceptance may be inferred from the receipt of notice, there must be notice. 6 *Cyc.* 412, 413. Special circumstances, such as the existence of a custom relieving the shipper from the requirement of notice, or actual knowledge by the carrier, may modify the rule, but there was no such custom in this case; on the contrary, the custom was for the shipper to give notice to the carrier. The case of *Illinois Central Railroad Co.* v. *Smyser,* 38 *Ill.* 354, is relied on by plaintiff; but in that case, though the other circumstances were similar, it appeared that the agent of defendant was notified the cars were ready, and received manifests of their contents at the usual time. On the other hand, in *Southwestern Railroad Co.* v. *Webb,* 48 *Ala.* 585, it was held that there was no delivery of cotton left at the railroad warehouse without notice to the agent, though two consignments had been received and sent forward just previously. In *Houston and*

260     COURT OF ERRORS AND APPEALS.

Stand. Comb. Thread Co. v. Pa. R. R. Co.     88 N. J. L.

*Texas Central Railroad Co.* v. *Hodde,* 42 *Tex.* 467, the carrier placed a car on a siding for the shipper, and the contents took fire half an hour after being loaded thereon. There was no notice to the agent that the car was ready. It was his custom to visit this and other sidings in the evening, and check up the contents. He had not had time to do so. It was held that under the circumstances, delivery and acceptance was a jury question. The case of *Tate* v. *Yazoo, &c., Railroad Co.,* 29 *So. Rep.* 392, is very similar to that at bar. The custom was to notify the conductor of the daily freight train that a car was needed, and he would then leave one on the siding. The car would then be loaded, and the next freight train would be flagged to pick it up, and the conductor of that train would deliver a bill of lading. The car in question was left on the siding according to custom, loaded after the train had gone, and was burned before the next train came on the following day. The court held that there could not be delivery without acceptance, and there could not be acceptance until the carrier had notice that the car was ready.

Whether, in a case of loading by the shipper on a siding, the carrier is entitled to a reasonable time after notice to come and take charge of the property, is a question not presented for decision, because no notice was given. It is true that it could not be given at the nearest station or office of the company, because that was closed; but of course defendant's agent was under no obligation to keep the office open indefinitely. Our conclusion on this branch of the case is that the stipulated facts were insufficient in law to warrant a finding of delivery to the carrier.

But assuming a delivery, still under the terms of defendant's uniform bill of lading, the goods remained at the risk of the shipper. The "Carmack amendment," which is part of section 20 of the Interstate Commerce act, as amended by the Hepburn act of June 29th, 1906 (34 *Stat. at L., p.* 584, *ch.* 3591, quoted in *Adams Express Co.* v. *Croninger,* 226 *U. S.* 491), requires the issue by carriers of a bill of lading. Under the act, and the regulations made by the interstate commerce commission pursuant thereto, defendant was required to sub-

JUNE TERM, 1915. 261

*88 N. J. L.* Stand. Comb. Thread Co. v. Pa. R. R. Co.

mit and publish with its tariffs a uniform bill of lading; and in the absence of a disclaimer by the shipper and the acceptance of a ten per cent. higher rate, the terms of the uniform bill of lading are declared applicable. Such a bill of lading was submitted, approved and published. It contained the clause quoted above. In *International Watch Co. v. Delaware, Lackawanna and Western Railroad Co.,* 80 *N. J. L.* 553; *affirmed,* 82 *Id.* 528, on the opinion delivered in the Supreme Court, it was held (*p.* 556 of 80 *Id.*), that "where no bill of lading is given, the shipper himself stands in the same position as if he was the lawful holder of such bill of lading, and the liability of the company to such shipper is the same liability as is imposed in favor of the lawful holder of a receipt or bill of lading." The clause in question, then, was binding on both parties, and it remains to ascertain whether the siding in question was a "private or other siding." It was not a private siding. The trial court held the view that a public siding was not in the intendment of the clause, an "other" siding. We do not share this view. If sidings are to be classified into private and other sidings, the other sidings would necessarily be other than private and the logical alternative to "private" is "public."

On the facts stipulated the defendant was entitled to judgment. The judgment for plaintiff will accordingly be reversed, and a new trial ordered.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, VREDENBURGH, TERHUNE, HEPPENHEIMER, WILLIAMS, JJ. 14.