THE NATIONAL IMPORTING AND TRADING COMPANY, Inc., Defendant in Error, *vs.* E. A. BEAR & Co., Plaintiff in Error.

*Opinion filed February 16, 1927.*

1. CONTRACTS—*what constitutes a shipment of goods—installments.* A shipment does not consist in loading, alone, but consists in the complete delivery of goods by the shipper to a carrier for transportation, whereby the shipper parts with all control over the goods with nothing further to be done by him to complete delivery; and where goods to be shipped are delivered to a carrier in installments the shipment is not made until the delivery is complete, and until such time the relation of the carrier to the installments delivered is that of warehouseman and not carrier.

2. SAME—*whether time is of essence of mercantile contract is a question of fact.* Whether or not time is of the essence of a mercantile contract is a question of fact, to be determined from the language used by the parties, read in the light of the circumstances surrounding them at the time of making the contract.

3. SAME—*existing trade customs may be considered in construing a mercantile contract.* Where a person deals in a particular market he must be taken to deal according to the known general or uniform usages of that market, and, where no particular stipulations are made to the contrary, a contract made in the ordinary course of business is presumed to be made with reference to any existing usage or custom relating to the trade, and it is always competent to resort to such usage or custom to ascertain and fix the terms of the contract and the meaning of the words used.

4. SAME—*what is not a breach of contract as to time of shipment.* Where a contract for importation of goods in three shipments calls for the first shipment "from the Orient * * * in April," loading the goods on board the vessel March 31, being the day before the ship sailed, will not constitute such a deviation from the contract as to the time of shipment as will enable the purchaser to repudiate the contract, where the act of loading on said day does not affect the contract in the matter of the identification or quality of the goods.

5. SAME—*when party cannot set up Sales act to defeat contract altered by parol.* A change in the terms of performance of a contract makes a new agreement, as the thing contracted for in any contract is performance, and where the original contract must be in writing such a change in the contract must also be in writing; but a party who has induced the making of a parol agreement altering the terms of performance of a contract for importation of goods, and for whose benefit the change is made, will not be permitted to set up the Sales statute to defeat an offer of performance in accordance with the alterations in the agreement.

6. FRAUD—*when the Statute of Frauds cannot be invoked.* The Statute of Frauds was not intended to enable one to found a claim upon his own iniquity or take advantage of his own wrong.

7. INSTRUCTIONS—*instruction directing verdict should state all essential issues of fact.* An instruction which directs a verdict or amounts to such a direction must necessarily leave to the jury all issues of fact necessary to authorize the verdict directed, but a plaintiff, in tendering such an instruction, is not bound to anticipate and include every possible defense.

8. SAME—*when instruction directing verdict in suit on contract is erroneous.* In a suit on a contract for the importation of goods or produce, where one of the defenses set up by the purchaser was that the goods were not of the quality contracted for and the evidence is so conflicting on that question that the court could not have directed a verdict for the plaintiff on the whole evidence, it is prejudicial error to give an instruction directing a verdict for the plaintiff without requiring a finding on the issue of fact as to the quality of the goods.

9. EVIDENCE—*letters, if otherwise competent, are admissible although they contain self-serving statements.* As a general rule a party cannot by self-serving declarations make evidence for himself concerning his dealings with the other party or the liability of the other party, but letters otherwise competent will not be rejected because they contain statements of a self-serving character.

THOMPSON and DUNN, JJ., dissenting.

WRIT OF ERROR to the First Division of the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. SILAS COOK, Judge, presiding.

PARKER H. HOAG, FREDERIC ULLMANN, CHARLES M. HAFT, WILLIAM T. CHURCH, and EGBERT ROBERTSON, for plaintiff in error.

McCORMICK, KIRKLAND, PATTERSON & FLEMING, (CHARLES F. RATHBUN, LOUIS G. CALDWELL, and JOSEPH H. PLECK, of counsel,) for defendant in error.

Per CURIAM: The defendant in error filed a suit in the superior court of Cook county against the plaintiff in error company on a contract for the sale and delivery of 225 cases of Chinese crystal hen egg albumen, of about 200 pounds net per case, at the price of $1.54 per pound, duty paid. The contract signed by the parties contained the following specifications:

"Shipment from the Orient, 75 cases in April, 50 cases in May and 100 cases in June, 1920. Quality, f. a. q. of the season. To be approved before removal from docks. Terms of payment: Net cash sight draft against bill of lading. Insurance, by seller. Weights, shipping. Tare, shipping. Sample for arbitration to be drawn and sealed in the presence of both buyer and seller or by some persons agreed upon by both."

The contract further provided that the albumen should comply with the food and drug acts of June 30, 1906, and with the requirements of the Department of Agriculture as to zinc. The plaintiff in error defended on the ground of failure to perform in accordance with the terms of the contract. Some counts of the declaration having averred a parol agreement to amend certain terms of the contract, the plaintiff in error also filed a plea of the Statute of Frauds and the Uniform Sales act. The jury returned a verdict

for the plaintiff in the sum of $18,500 as damages for the breach of the contract. The Appellate Court affirmed this judgment, and the cause comes here by writ of *certiorari.*

The vendor sold the goods in the open market, and the suit is to recover the difference between such sale price and the contract price resulting from the decline in the market value of the goods.

The contentions of the plaintiff in error are, first, that having pleaded the Statute of Frauds the modifications of the contract are avoided, and the offers of performance on the part of the defendant in error having been made according to the parol amendment of the contract, there was a failure of performance and plaintiff in error was justified in refusing the goods when tendered. It is also contended that the contract as sought to be amended was void under section 4 of the Uniform Sales act, the price of the goods sold being for more than $500, as in such case that act requires that the contract of sale be in writing, and that the same rule is to be applied to a modification of a contract made under the Sales act as applies to modifications under the Statute of Frauds.

The contract was dated November 20, 1919. The facts pertaining to the modification of it as found by the Appellate Court, and which must therefore be taken as the facts here, are, that about March 12, 1920, Miner E. Bear, secretary of the plaintiff in error company, went to New York and conferred with Royal L. Firman, treasurer of the defendant in error, and asked that the plaintiff in error be allowed to take some of the albumen on trade acceptances instead of sight drafts and that delivery of the same be in lesser quantities and over a longer period of time than provided for in the contract. He requested that the deliveries be made in smaller quantities for the reason that it would assist in financing the transaction for his company. Firman told him that the vendor would be glad to do anything in that respect that it could do, but that he could not prom-

ise anything until he learned whether the bank financing the transaction for the vendor would accept trade acceptances on the shipments. On March 18, 1920, the plaintiff in error wrote to the defendant in error, saying: "With reference to the trade acceptance on these three shipments of albumen to come, will say that we would like to have these on ninety-day acceptances." To this the defendant in error replied that it would be willing to accept ninety-day acceptances if its bank would agree. It appears from the evidence that later the bank did agree to take care of these acceptances. In the latter part of February, 1920, the market price of albumen began to decline. In March the price had dropped from $1.54 to $1.15, and the price decline continued up to the time this action was started. By the middle of July the price had declined to about eighty cents. On April 13, 1920, the plaintiff in error wrote the defendant in error attempting to persuade the latter to cancel the contract, calling attention to the fact that the price had gone down to $1.23, and suggesting that the defendant in error had not made the actual purchase of albumen to cover the contract. To this letter the defendant in error replied that the contract represented an actual purchase on its part to cover it and refused to cancel. During the first week of May the defendant in error notified the plaintiff in error by telephone that the April shipment had arrived in Seattle and would be forwarded in a few days by freight. Elmer Bear, the president of the plaintiff in error, in the conversation that followed referred to the terms of payment and again requested a modification by accepting trade acceptances, to which the defendant in error agreed. It was also in this conversation agreed that a less number of cases should be delivered than those required by the contract. The plaintiff in error was thereby privileged to take 25 instead of 75 cases. The shipment which included the 75 cases, referred to in the contract as the April shipment and which left Shanghai, China, on April 1, reached

Seattle, Washington, on May 2, and a few days later came on to Chicago and was unloaded in the warehouse of White, Stokes & Co., subject to delivery orders of the defendant in error. After some correspondence and conversations, certain trade acceptances and changes in the delivery of the goods were agreed upon, and Elmer Bear, president of the plaintiff in error, directed the defendant in error to have the papers made out at the bank, which was done. It appears that numerous other conversations were had in May and June. An invoice for 25 cases of the April shipment was delivered to the plaintiff in error, and it thereafter called up the office of the defendant in error complaining that no order for delivery had been sent with the invoice, it being understood between the parties that the delivery was to be effected by an order on White, Stokes & Co. On July 8 sight drafts and trade acceptances covering the shipments were presented to the plaintiff in error accompanied by a delivery order, and the plaintiff in error refused to receive the goods, ascribing no reason for such refusal. At a later conference it was suggested by counsel for the plaintiff in error that the April shipment had not taken place according to the terms of the contract, it being conceded that the April shipment was put on board a steamer at Shanghai on the last day of March. Firman then on July 14 (the time for delivery not having expired) told the plaintiff in error that the defendant in error had in New York at that time albumen of the same kind, shipped in the months and of the quality specified in the contract, even as construed by the plaintiff in error, which would be delivered to the plaintiff in error if desired. The reply was that the plaintiff in error would not take anything under the contract. Firman's evidence on this point is corroborated by a salesman who testified that the attorney for the plaintiff in error then stated, "No deliveries would be accepted under the contract." On August 28, that time still being within the period limited for deliveries according

to the contract, the defendant in error wrote, "We have 225 cases here which we can tender in the strictest technical compliance with your contract." The plaintiff in error replied on August 31 in a letter which is properly characterized as evasive and as constituting a rejection of the offer. Attempts to secure performance of the contract were futile, as were efforts to secure an adjustment. On October 14 the defendant in error made a final offer, both by letter and telegram, to deliver the 225 cases contracted for, which offer, however, was refused, the plaintiff in error then specifying as ground for such refusal that the quality of the albumen was not according to the contract.

The first question involved in the case is whether there was a breach of the original contract by placing the albumen on board ship in the Orient on the 31st of March instead of during the month of April. It is conceded that the boat left Shanghai on April 1. This involves the question of construction of the language, "Shipment from the Orient, 75 cases in April," etc.

It is contended by the plaintiff in error that in contracts of this character time is of the essence of the contract and the buyer may refuse delivery if shipment is not made in strict accordance with the contract, though the difference may be slight; that statements of the date of shipment by the vendor go to the identification or description of the property and are therefore in the nature of warranties, proof of the truth of which is a condition precedent to recovery for failure to accept, and it cites in support of this contention *Bowes* v. *Shand,* 2 App. Cas. 455, (an English case decided in 1877,) and cases based thereon. That case cites no authority, and its force as an authority is much weakened by the fact that it is not in harmony with the great weight of authority in this country as to what constitutes a shipment or the time when a shipment is considered as having been made. The contract in the *Shand case* provided for the sale of rice "to be shipped at Madras, or

coast, during the months of March or April, by the steamer Rajah." A portion of the rice was loaded on the steamer in February, but the shipper did not complete the delivery to the vessel until some time in March. It was held that the loading of the vessel constituted the shipment and that the rice loaded in February was shipped in February and not in March, and so constituted a breach of warranty to ship in March or April. In this country a shipment does not consist in loading, alone, but consists in the complete delivery of goods by the shipper to a carrier for transportation, and the shipment is not made until the shipper has parted with all control over the goods and nothing remains to be done by him to complete the delivery, and where goods to be shipped are delivered to a carrier in installments the shipment is not made until the delivery is complete, and until such time the relation of the carrier to the installments delivered is that of warehouseman and not carrier. *Kansas City, M. & O. Ry. Co.* v. *Cox,* 108 Pac. 380; *Missouri Pacific Railroad Co.* v. *Riggs,* 62 id. 712; *Fisher* v. *Lake Shore and Michigan Southern Railroad Co.* 17 Ohio C. C. 491; *Illinois Central Railroad Co.* v. *Hornberger;* 77 Ill. 457; *Glass* v. *Goldsmith,* 22 Wis. 488; *O'Neill* v. *N. Y. C. & H. R. R. Co.* 60 N. Y. 138; *Basnight* v. *A. & N. C. R. R. Co.* 111 N. C. 592; *S. C. T. Co.* v. *Pennsylvania Railroad Co.* 95 Atl. 1002; *G. C. & S. F. R. R. Co.* v. *Lowery,* 155 S. W. 992; *Clara Turner Co.* v. *N. Y., N. H. & H. Ry. Co.* 84 Atl. 298; *Central of Georgia Railroad Co.* v. *Sigma Lumber Co.* 170 Ala. 627; *St. Louis, Alton and Terre Haute Railroad Co.* v. *Montgomery,* 39 Ill. 335; *Burrowes* v. *Chicago, Burlington and Quincy Railroad Co.* 87 Neb. 142.

Under the above rule, in the absence of a specific contract or of a trade custom to the contrary, the loading of a part of the rice on the steamer in February in the *Shand case* would not constitute a shipment in February but a shipment in March. There was proof of a trade custom

in the case. While there are a few cases which hold that in those particular cases the time of shipment specified in the contract was a warranty as to the identity of the particular goods sold, in this case no particular goods were sold. The evidence shows that vast quantities of albumen are manufactured in the Orient, manufacturing commencing in January and shipments in March, and that there was no difference whatever between shipments made in March and those made in April. The evidence shows that one case of albumen meeting all the other requirements of the contract is just like any other. The time of shipment in the contract was not intended as a warranty of the quality of the albumen, as the contract in detail specifies its quality.

Whether or not time is of the essence of mercantile contracts is a question of fact, to be determined from the language used by the parties, read in the light of the circumstances surrounding them at the time of making the contract. Where a person deals in a particular market he must be taken to deal according to the known general or uniform usages of that market. (*Eau Claire Canning Co. v. Western Brokerage Co.* 213 Ill. 561.) Where no particular stipulations are made to the contrary, contracts made in the ordinary course of business are presumed to be made with reference to any existing usage or custom relating to such trade, and it is always competent to resort to such usage or custom to ascertain and fix the terms of the contract; (*El Reno Grocery Co.* v. *Stocking,* 293 Ill. 494;) and where words are used in a mercantile contract which are susceptible of more than one meaning, it is always competent to prove that in the particular market in which the contract was made according to the known usages of that market such words have a particular meaning. It is therefore competent in this case to prove that in the albumen trade, in the market in which the contract was made, the terms "Shipment from the Orient, 75 cases in April," had a particular meaning. In Page on Contracts (vol. 4, sec. 2106,

p. 3361,) it is said: "The tendency of modern law is to hold that the question whether or not time is of the essence of the contract is to be regarded as a question of construction, and to assume that in the absence of an expression of intention to the contrary, either express or implied, time is not of the essence of a contract, either at law or in equity."

In *Coyne* v. *Avery*, 189 Ill. 378, the contract called for five cases of eggs, one to be shipped on Tuesday and the balance on Wednesday and Thursday from points in Kansas or Nebraska. They were shipped a part on Tuesday, a part on Thursday and a part on Friday. A suit for an unpaid portion of the purchase price was defended on the ground that time of shipment was a material part of the contract and that failure to ship at the precise time of the contract gave a right to rescind. This contention was not sustained. It was there held that a contract of that character, where a shipment from any point in either Kansas or Nebraska would be a compliance with the contract and there would necessarily be a difference of days in the time of arrival, depending upon the point of shipment, was not an absolute contract that the shipment would be made on the days specified.

In *Bowman & Bull Co.* v. *Linn*, 279 Ill. 397, a suit brought to recover the difference between the contract price and the proceeds arising from the sale of a shipment of New Zealand fresh creamery butter to be shipped from New Zealand to Seattle and thence to the vendee, it is said: "Nowhere in this correspondence is it intimated that time was to be of the essence of the contract and that the butter was to shipped not later than January 9. On the contrary, defendant in error was informed that the butter was being shipped by vessel on the Pacific Ocean and the approximate date when the vessel was due to arrive in Seattle. It is a matter of common knowledge that a shipment of this kind is liable to be delayed at any time by unfavorable

weather, and it is apparent that defendant in error entered into this contract fully understanding that no warranty was being made as to the exact time of shipment. After the delay had occurred he admits that he made no objection to the contract being carried out because of the delay in the arrival of the ship. Plaintiff in error complied with its contract and was entitled to recover."

In *DeStefano* v. *Associated Fruit Co.* 318 Ill. 345, where the contract called for a shipment of grapes on the 8th day of October, 1920, from California, but which were shipped on the 12th of October, it was held that the time of shipment was not of the essence of the contract.

China, Japan, Ceylon and Sumatra were customarily known as the Orient, and a shipment of 75 cases of albumen in April from any place in this vast territory, without regard to when it was manufactured, would have technically met the call of this contract, and the evidence shows that the length of time of arrival of shipments made from these various countries would vary greatly. The date of the shipment could in nowise tend to identify the goods shipped and could give only a very indefinite and general idea of the time of arrival. We cannot hold, as a matter of law, that time of shipment was of the essence of this contract and that the vendee had a right to rescind the same for a breach of warranty by reason of the fact that the albumen in question was placed upon the steamer on March 31 instead of April 1.

It is also contended that the modifications of the contract made by parol agreement were void under the Sales act, and as performance was tendered in accordance with the contract as modified and not with the original contract there was a failure to perform, and the plaintiff in error is therefore entitled to have this judgment set aside. The defendant in error argues that the modifications of the contract, affecting, as they did, performance only, do not constitute such modifications as to render the contract one partly

oral and partly written; that the performance was but a substituted performance, and an action brought upon the original contract alleging non-performance of the subsequent parol agreement as the basis of the suit should be sustained. While this is the view taken by the courts of some States, it does not appear to us to be in accord with the plain construction of the language used. In any contract the thing contracted for is performance. Changes in the requirement as to performance are changes in the contract, whether it be as to time of delivery or character of goods to be delivered. Failure to perform according to the terms of the contract is failure to comply with the contract. An agreement, therefore, to furnish a different quality or deliver at another time is another contract, and where the original contract must be in writing, so must be the change effected by the agreement of the parties. This is one of the fundamental principles of contract and the duty arising thereon to do the things agreed to be done. (*Imperator Realty Co.* v. *Tull,* 228 N. Y. 447.) May the defendant, then, defend that since the original contract must be and was in writing and the change agreed upon rested in parol, the plaintiff may not recover if it offer performance in accordance with the parol changes in the contract? It seems clear that where a change is secured at the instance of the plaintiff, he must, if he expects to maintain an action thereon, see that the change meets the requirements imposed by the original contract. But can this with the same confidence be said in a case where, as here, the change is secured at the request of the defendant and is presumably for his benefit? We think not. He has secured a waiver by the plaintiff of the latter's right to strict performance. To hold that one may so secure a more advantageous agreement than that embodied in the original contract and then be permitted to avoid the contract because such change has not been reduced to writing would be to shock the conscience of all fair-minded men. It is of the deeper principles of law and

justice that one who requests and secures the benefit of an oral change in a written contract is to be estopped from claiming that the other who granted such request was in default on the due day of the contract because of omission or failure to carry out the terms of the original agreement. To hold otherwise would be to say, in effect, that courts cannot administer the deeper principles of justice. It is a principle reaching to the very roots of justice that no man shall be allowed to take advantage of another's omission which has been induced by his own request. The Statute of Frauds was not designed or intended to afford an opportunity for escape from the fundamental principle that no one shall be permitted to found a claim upon his own iniquity or take advantage of his own wrong. (*Imperator Realty Co.* v. *Tull, supra; Swain* v. *Seamens,* 76 U. S. 254; *Penn Steel Co.* v. *Title Guaranty and Trust Co.* 193 N. Y. 37; *McKennan* v. *Mickelberry,* 228 Ill. 460.) In such a case he will be held to have waived a strict performance of the original contract. (*Fuchs* v. *Peterson,* 315 Ill. 370; *Becker* v. *Becker,* 250 id. 117; *Zempel* v. *Hughes,* 235 id. 424; *Marshall* v. *Keach,* 227 id. 35; *Gibson* v. *Brown,* 214 id. 330.) We are of the opinion that this ground of the plaintiff in error is not tenable.

The plaintiff in error has objected to the sixth, eighth and twelfth instructions given on behalf of the defendant in error. It is objected as to these instructions that they remove from the consideration of the jury certain issues of fact raised by the pleadings and the evidence. The sixth instruction is as follows:

"The court instructs the jury that, if you believe from the evidence that as a part of the contract entered into between the plaintiff and the defendant for the sale by the plaintiff to the defendant of the albumen in question, it was agreed by the defendant that it would take and receive the albumen specified in the contract, and that the defendant refused finally on October 12, 1920, to accept the albu-

men in question or to have anything more to do with the contract, then your verdict should be for the plaintiff," etc.

An instruction which directs a verdict, or amounts to such direction, must necessarily leave to the jury all issues of fact necessary to authorize the verdict by such instruction directed. (*Illinois Iron and Metal Co.* v. *Weber,* 196 Ill. 526; *Pardridge* v. *Cutler,* 168 id. 504.) The plaintiff is not bound, however, to anticipate and include every possible defense. (*Mt. Olive Coal Co.* v. *Rademacher,* 190 Ill. 538; *Judy* v. *Sterrett,* 153 id. 94.) That this instruction directs a verdict is not denied, but it is said, first, that it is not erroneous and does not overlook any defense made, for the reason, as we understand the argument of counsel, the albumen referred to in the instruction is that specified in the contract, and its identity is thereby established both as to delivery and quality; and second, the trial court should have instructed the jury to return a verdict for the plaintiff on the whole evidence. The Appellate Court determined the issues of fact and those issues are conclusive here, but they were issues before the jury. There is little dispute of the facts concerning shipment, delivery or tender but there is a sharp dispute in the evidence as to the quality of the albumen. The testimony of chemists, each of whom had analyzed samples, was directly opposite, one testifying that the albumen was in the early stages of decomposition, while the other testified that the condition of the albumen was first class. The instruction tells the jurors that if they believe from the evidence that it was agreed by the defendant that it would take and receive the albumen specified in the contract and that it finally refused to accept the albumen or have anything more to do with the contract, they were to return a verdict for the plaintiff. This instruction entirely ignores the issue of fact concerning the quality of the albumen. That issue was raised as a defense by the plaintiff in error and was the only issue of fact upon which there was serious conflict in the evidence. The court,

therefore, could not have directed a verdict for the plaintiff on the whole evidence, and while it may be said that erroneous instructions will not reverse in a case where the court should, on the whole evidence, direct a verdict of the character rendered by the jury for the reason that such was the only verdict that could be sustained, this is not so where there is a contested issue of fact, as in this case, concerning the quality of the albumen.

It is contended by defendant in error that the words "the albumen in question" mean "the albumen in accordance with the contract," and that plaintiff in error cannot complain of the use of this term in the instructions as the same term is used in instructions given at its request. While this term is used in four of plaintiff in error's instructions, yet the sense in which it is therein used can not furnish a proper criterion to show the sense in which the expression is used in the instruction here in question, in which the context and subject matter are different. This instruction to the jury, ignoring the issue of the quality of the goods, was prejudicial error. We are loath to reverse a judgment in a case of such magnitude for one erroneous instruction, but are of the opinion that it cannot be said that the verdict of the jury was free from its vicious influence.

The eighth instruction in effect told the jury that if they found from the evidence, according to the law given by the court, that the defendant breached the contract they should find for the plaintiff. Such an instruction is not open to the objection urged against the sixth instruction, for the reason that it is made to depend upon the instructions to the jury as to the law on the whole case. This is likewise true of the twelfth instruction, which tells the jury that if they find from the evidence "and these instructions" that the defendant has failed and refused to take the albumen in question under the contract and pay for the same,

and that it has thereby broken the contract as charged in the declaration, the plaintiff is entitled to recovery.

Certain letters introduced in evidence were objected to on the ground that they were of a self-serving character. Self-serving declarations, whether they be made in the form of letters or otherwise, are not admissible in evidence. However, a letter otherwise competent will not be rejected because it contains statements of a self-serving character. The general rule is, that a party cannot by self-serving declarations make evidence for himself concerning his dealings with the other party or the liability of such other party. (*Cooke & Co.* v. *Miller Brewing Co.* 316 Ill. 46.) We have examined the letters complained of in this case, and while they contain certain self-serving statements, the letters themselves are competent as showing the transactions between the parties pertaining to the performance of the contract.

For the error in giving the sixth instruction the judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

THOMPSON and DUNN, JJ., dissenting:

The contract in question provided for "shipment from the Orient, 75 cases in April," which, as the authorities hold, means placing on board ship during the month of April. The contract did not say anything about the time of delivery, and a discussion of whether the change in time of shipment affected or might have affected the time of delivery has no place in this case. The parties had the right to contract for shipment in April, and having entered into such a contract the purchaser has the right to insist upon its fulfillment. A shipment on March 31 was no more a shipment in April than a shipment on January 31 or May 31. What was sold was not merely seventy-five cases of albumen of a certain quality, but was seventy-five cases of albumen to be put on board ship in the month of April.

Albumen put on board ship in any other month is not the article sold. Where the purchaser contracts to buy rice shipped in March he is not obliged to take rice put on board ship in February, although the ship sails in March. (*Bowes* v. *Shand,* 2 App. Cas. 455.) Where the article sold is pig iron to be shipped from Glasgow, the seller can not compel the buyer to accept pig iron shipped from Leith. (*Filley* v. *Pope,* 115 U. S. 213.) Where the parties bargained for a "shipment from Java to Philadelphia," the buyer may refuse to accept sugar shipped from Java to New York and later diverted to Philadelphia. (*National Bank* v. *Lamborn,* 2 Fed.—2d ser.—23.) The courts have neither the means nor the right to consider whether there is any substantial reason why the parties described the article sold by fixing the time or place of shipment. Merchants usually attach some value to stipulations they place in their contracts, and the purchaser has the right to demand delivery, according to contract, of the article he buys and not some other article. If the article tendered is different in any respect from the article bargained for the purchaser is not bound to take it. Equally good albumen might have been shipped in March or May, but the parties chose, for reasons sufficient to themselves, to contract respecting albumen shipped in April and such albumen is all the purchaser is obliged to take. The only safe rule is to allow competent persons to make their own contracts. It is the duty of the courts to adhere to the terms used and to enforce a contract as it is written.

For these and other reasons unnecessary to set forth we respectfully dissent.